# FILE

**IN CLERKS OFFICE**
**SUPREME COURT, STATE OF WASHINGTON**

DATE ___JUN 2 7 2013___

*Madsen C.J.*

**CHIEF JUSTICE**

This opinion was filed for record
at __8:00 am__ on __June 27, 2013__

*Ronald R. Carpenter*
Ronald R. Carpenter
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | |
|---|---|
| ROBERT PIEL & JACQUELINE PIEL,<br>husband and wife,<br><br>Appellants,<br><br>v.<br><br>THE CITY OF FEDERAL WAY, a<br>Municipality organized pursuant to the laws<br>of the State of Washington,<br><br>Respondent. | NO. 83882-8<br><br>EN BANC<br><br>Filed ___JUN 2 7 2013___ |

STEPHENS, J.—This case requires us to consider whether a tort claim for wrongful termination in violation of public policy is viable based on provisions of chapter 41.56 RCW involving the Public Employees Relations Commission (PERC). The lower court dismissed Richard Piel's suit against the city of Federal Way (City), concluding the existence of statutory remedies authorized under chapter 41.56 RCW prevented him from establishing the "jeopardy prong" of the common law claim. We take this opportunity to better explain our jeopardy analysis and harmonize our recent decisions in *Cudney v. ALSCO, Inc.*, 172 Wn.2d

524, 259 P.3d 244 (2011), *and Korslund v. DynCorp Tri-Cities Services., Inc.*, 156 Wn.2d 168, 125 P.3d 119 (2005), *with Smith v. Bates Technical College*, 139 Wn.2d 793, 991 P.2d 1135 (2000). In *Smith*, we recognized that an employee protected by a collective bargaining agreement may bring a common law claim for wrongful termination based on the public policy provisions of chapter 41.56 RCW notwithstanding the administrative remedies available through PERC. Nothing in our later opinions in *Korslund* and *Cudney* altered this holding. We reverse the lower court's order of dismissal and remand for further proceedings.

## FACTS

At the time of incidents giving rise to this action, Richard Piel was a 25-year veteran of law enforcement, with over 11 years in the Federal Way Police Department (Department). Piel was promoted to lieutenant in 1998. Until the incidents at issue here, Piel had consistently received high marks in performance reviews.

In late 2002, the 12 lieutenants in the Department decided to create a union and Piel was chosen by the other lieutenants to manage its formation. Although the Department's administration was initially supportive of the union activity, according to Piel the administration's attitude toward the efforts later soured. Shortly thereafter, Piel began experiencing a marked increase in his duties and responsibilities without commensurate support. By 2004, Piel began to feel his unit was the target of unusual and obstreperous internal affairs investigations.

In January 2005, the lieutenant's guild was officially certified. That same month, Piel received his yearly evaluation, albeit late. The evaluation rated Piel as performing poorly in his job functions. Piel later learned the negative reports were not generated by his commanding officer, but by the deputy chief of the Department, which was outside the normal procedure for performance reviews. Meanwhile, his requests for assignments were denied and his unit continued to be the target of investigations from internal affairs.

In May 2005, Piel was injured on the job and had to take three months of leave to recover from corrective knee surgery. During his medical leave and upon his return, Piel was told he would be demoted and was relieved of some of his responsibilities based on allegedly poor performance. Similar incidents continued into 2006.

In March 2006, Piel advised an officer over the phone about the officer's options after the officer stopped a fireman on suspicion of driving while under the influence. The Department alleged that Piel's advice and involvement in the matter violated Department standards. On April 18, 2006, Piel was placed on administrative leave pending an investigation. He was terminated in July 2006. Piel successfully grieved his termination and was reinstated 14 months later. The City was ordered to pay all back pay and benefits.

Upon returning to his job, Piel was discouraged by the reception from his fellow officers. The City had not yet paid him his award of back pay and benefits. He was nervous and had not been sleeping well. His first two days back at work

were stressful and tense. During this time, a conversation took place in the briefing room between Piel and other officers in which Piel allegedly expressed violent feelings against members of the Department. The parties dispute the facts about what actually happened in the briefing room.

An investigation followed. Ultimately, Piel was terminated for being untruthful about what had happened in the briefing room. Piel and his wife brought this suit for wrongful termination in violation of public policy, claiming, among other things, that he was fired for engaging in protected union-organizing activities.

The trial court dismissed the Piels' suit on summary judgment. The court explained that

> *Korslund*[,156 Wn.2d 168,] is the controlling authority. Based on *Korslund*, the Court concludes that the remedies available to Piel through PERC are adequate to protect the public policy grounded in RCW 41.56. Since Piel cannot satisfy the "jeopardy" element, his wrongful discharge in violation of public policy claims grounded in RCW 41.56 are dismissed.

Clerk's Papers at 771. The Piels sought direct review by this court based on the apparent conflict between *Smith* and *Korslund*. Consideration was stayed pending this court's final decision in *Cudney*, 172 Wn.2d 524. After *Cudney* was decided, we retained this case for hearing and decision.

## ISSUE

Are the remedies available to a public employee under chapter 41.56 RCW adequate as a matter of law, such that the employee may not assert a tort claim for wrongful discharge in violation of public policy? (Short Answer: No.)

ANALYSIS

This court first recognized a common law cause of action for wrongful discharge in violation of a clear mandate of public policy in the landmark case of *Thompson v. St. Regis Paper Co.*, 102 Wn.2d 219, 685 P.2d 1081 (1984). In cases following *Thompson*, we acknowledged that public policy tort claims generally arise in four areas: "(1) where the discharge was a result of refusing to commit an illegal act, (2) where the discharge resulted due to the employee performing a public duty or obligation, (3) where the [discharge] resulted because the employee exercised a legal right or privilege, and (4) where the discharge was premised on employee 'whistleblowing' activity." *Dicomes v. State*, 113 Wn.2d 612, 618, 782 P.2d 1002 (1989) (citations omitted).

In *Gardner v. Loomis Armored, Inc.*, 128 Wn.2d 931, 941, 913 P.2d 377 (1996), the court adopted the analytical framework set forth in a leading treatise to assess when an employee may recover for wrongful discharge in violation of public policy. *See* HENRY H. PERRITT JR., WORKPLACE TORTS: RIGHTS AND LIABILITIES § 3.1 (1991). This test examines (1) the existence of a "clear public policy" ("clarity" element), (2) whether "discouraging the conduct in which [the employee] engaged would jeopardize the public policy" ("jeopardy" element), (3) whether the "public-policy-linked conduct caused the discharge" ("causation" element), and (4) whether the employer is "able to offer an overriding justification for the [discharge]" ("absence of justification" element). *Gardner*, 128 Wn.2d at 941. Here, only the jeopardy element is at issue.

Prior to our adoption of Perritt's four-part test, our decisions tended to "lump[] the clarity and jeopardy elements together . . . ." *Id.*; *see also Dicomes*, 113 Wn.2d at 617 ("[T]he employee has the burden to show that the discharge contravened a clear mandate of public policy."). By parsing out these two related but conceptually distinct concepts, this court in *Gardner* sought to achieve "a more consistent analysis." *Gardner*, 128 Wn.2d at 941. And in doing so, we made clear that "our adoption of this test does not change the existing common law in this state." *Id.*

Describing the jeopardy element, we explained it serves to "guarantee[] an employer's personnel management decisions will not be challenged unless a public policy is *genuinely* threatened." *Id.* at 941-42 (emphasis added). Also, we articulated the requisite showing a plaintiff must make in order to establish jeopardy:

> To establish jeopardy, plaintiffs must show they engaged in particular conduct, and the conduct *directly relates* to the public policy, or was *necessary* for the effective enforcement of the public policy. This burden requires a plaintiff to "argue that other means for promoting the policy . . . are inadequate." Perritt[, *supra*,] § 3.14, at 77. Additionally, the plaintiff must show how the threat of dismissal will discourage others from engaging in the desirable conduct.

*Id.* at 945 (alteration in original) (citation omitted).

We considered the viability of a wrongful termination claim based upon the statutory remedies under chapter 41.56 RCW in *Smith*, 139 Wn.2d 793. Consistent with our decision in *Gardner*, we recognized that the tort of wrongful termination was not limited to at-will employment settings. *Id.* at 806-07. And we allowed the

public employee's claim to go forward notwithstanding her failure to pursue administrative remedies through PERC. *Id.* at 811. In the course of our analysis, we examined key distinctions between available tort remedies and statutory remedies and concluded that Smith should not be barred from bringing a tort claim "simply because her administrative and contractual remedies may partially compensate her wrongful discharge." *Id.* at 806.

Not surprisingly, the Piels rely on *Smith* in asserting a wrongful termination claim against the City. The City counters that our recent decisions in *Korslund* and *Cudney* are inconsistent with recognition of a public policy tort claim where statutory remedies exist. Because *Smith* did not directly address the jeopardy analysis, while *Korslund* and *Cudney* did, the City insists *Smith* is not on point. We do not agree. It is hard to miss the similarity between the second question at issue in *Smith* (Must the plaintiff's tort claim be dismissed for failure to pursue statutory remedies through PERC?) and the question here (Must the plaintiff's tort claim be dismissed because he can pursue statutory remedies through PERC?). *See Smith*, 139 Wn.2d at 808-11.

The City emphasizes that the tort of wrongful discharge operates to protect the public interest rather than the plaintiff's private interest. Br. of Resp't at 17. If the suggestion is that *Smith* concerned only the private interest in personal compensation, this theory is belied by clear language in the *Smith* opinion. In recognizing Smith's right to pursue a wrongful discharge tort claim notwithstanding for-cause provisions of a collective bargaining agreement and

available PERC remedies, the court focused on preserving important *public policies*. *See Smith*, 139 Wn.2d at 804 ("'What is vindicated through the cause of action is not the terms or promises arising out of the particular employment relationship involved, but rather the public interest in not permitting employers to impose as a condition of employment a requirement that an employee act in a manner contrary to fundamental public policy.'" (quoting *Foley v. Interactive Data Corp.*, 47 Cal. 3d 654, 667 n.7, 254 Cal. Rptr. 211 (1988))); *see also id.* at 809 ("As we have explained, the tort of wrongful discharge seeks to vindicate the public interest in prohibiting employers from acting in a manner contrary to fundamental public policy. Because the right to be free from wrongful termination in violation of public policy is independent of any underlying contractual agreement or civil service law, we conclude Smith should not be required to exhaust her contractual or administrative remedies.").

The point of this discussion in *Smith* was to highlight the importance of having a tort remedy apart from the PERC remedy in order to advance public policy, not the plaintiff's personal compensation. Quoting favorably from *Retherford v. AT&T Communications of Mountain States, Inc.*, 844 P.2d 949 (Utah 1992), the court explained, "'When an employer's act violates both its own contractual just-cause standard and a clear and substantial public policy, we see no reason to dilute the force of the double sanction. In such an instance, the employer is liable for two breaches, one in contract and one in tort. It therefore must bear the consequences of both.'" *Smith*, 139 Wn.2d at 806 (quoting *Retherford* 844 P.2d at

960). These passages convincingly refute any characterization of *Smith* as concerning only personal compensation, not public policy.

Nor is it possible to dismiss *Smith* as unconcerned with issues arising under the jeopardy prong of the Perritt test. While it is true that the court in *Smith* did not walk through the four-part Perritt test, it plainly considered the adequacy of PERC remedies and held they were insufficient to foreclose a common law tort claim. *See* 139 Wn.2d at 805 (identifying additional tort remedies and concluding that "Bates' assumption that Smith's pending action before PERC will fully resolve her wrongful discharge claim is wholly unsupported"); *id.* at 810 (emphasizing unavailability of emotional distress and other tort damages under RCW 41.56.160). The adequacy of available remedies is the heart of jeopardy analysis in cases involving statutes that provide administrative schemes. In fact, the remedy analysis in *Smith* echoes the jeopardy analysis in *Korslund* and *Cudney* by calling out the available relief under the applicable statutes. *See Korslund*, 156 Wn.2d at 182 (noting "comprehensive remedies" under Energy Reorganization Act of 1974 (ERA) including back pay, compensatory damages, and attorney and expert witness fees); *Cudney*, 172 Wn.2d at 533 (describing remedies under the Washington Industrial Safety and Health Act of 1973 (WISHA), chapter 49.17 RCW, and observing "WISHA is actually *more* comprehensive than the ERA and is more than adequate").

Even after *Korslund*, Justice Madsen, in her concurrence/dissent in *Danny v. Laidlaw Transit Services, Inc.*, 165 Wn.2d 200, 193 P.3d 128 (2008), recognized

that *Smith* involved the same adequacy analysis as *Korslund*. Significantly, she drew a clear distinction between the results in the two cases:

> In such instances, the legal component of the jeopardy analysis is whether the remedies provided by the legislature adequately protect the public policy. *See, e.g.*, *Korslund*, 156 Wn.2d at 181 (concluding, as a matter of law, comprehensive statutory remedies against retaliation for reporting safety violations in nuclear industry adequately protects relevant public policy interests); *cf. Smith*, 139 Wn.2d at 805 (finding statutory remedies for wrongful discharge for filing a grievance inadequate where no recovery for emotional distress is available).

*Danny*, 165 Wn.2d at 232-33 (Madsen, J., concurring/dissenting). This direct contrast of *Korslund* and *Smith* undercuts the City's view that the cases involved different issues.

To accept the proposition that *Smith* failed to consider the adequacy of PERC remedies, we would have to disregard its holding recognizing "the fundamental distinction between a wrongful discharge action based in tort and an action [through PERC] based upon an alleged violation of an employment contract or a [collective bargaining agreement]." *Smith*, 139 Wn.2d at 809. Under *Smith*, the PERC remedial scheme does not provide adequate redress for the employer's public policy violation in retaliating against the employee for engaging in protected activity. How then can the remedial scheme under PERC be deemed adequate as a matter of law? If it were, then we would have to conclude that the plaintiff's claim in *Smith* should have been dismissed on summary judgment.

Similarly, other cases which have recognized the need for a public policy tort despite the existence of statutory remedies would be called into question. *See,*

*e.g.*, *Thompson*, 102 Wn.2d 219 (allowing claim for reporting violation of federal Foreign Corrupt Practices Act of 1977); *Ellis v. City of Seattle*, 142 Wn.2d 450, 13 P.3d 1065 (2000) (recognizing claim for retaliation for making safety complaints); *Roberts v. Dudley*, 140 Wn.2d 58, 993 P.2d 901 (2000) (allowing tort claim under RCW 49.12.200 and Washington's Law Against Discrimination (WLAD), chapter 49.60 RCW); *Bennett v. Hardy*, 113 Wn.2d 912, 784 P.2d 1258 (1990) (recognizing claim under WLAD). An overbroad reading of *Korslund* and *Cudney* would fail to account for this long line of precedent allowing wrongful discharge tort claims to exist alongside sometimes comprehensive administrative remedies. Importantly, neither case purported to overrule anything.

Declaring a wrongful termination tort claim dead on arrival in the face of administrative remedies would likewise unsettle the body of law this court has developed addressing collateral estoppel where wrongful discharge tort claims coexist with administrative remedies. We have on several occasions discussed the interplay between administrative proceedings such as under PERC and wrongful termination tort actions. In *Reninger v. Department of Corrections*, 134 Wn.2d 437, 951 P.2d 782 (1998), we held that an employee who loses in an administrative proceeding (there, a personnel appeals board hearing) may be collaterally estopped from asserting a wrongful discharge claim. In *Smith*, we noted that *Reninger* made it "even more compelling" to hold that the public policy tort does not require first pursuing PERC administrative remedies. 139 Wn.2d at 810. Recognizing the collateral estoppel effect of a prior administrative proceeding, we observed:

> Thus, if employees are required to exhaust all available administrative remedies in order to bring a civil suit for wrongful termination, the administrative remedy could be the *only* available remedy. Such a rule goes beyond the usual understanding of exhaustion as a *prerequisite* to seeking judicial relief . . . and ignores the fundamental distinction between contract and tort actions."

*Id.* at 811 (citation omitted). And, in *Christensen v. Grant County Hospital District No. 1*, 152 Wn.2d 299, 96 P.3d 957 (2004), we examined both *Reninger* and *Smith*, and held that factual findings in a PERC administrative proceeding have preclusive effect in a later tort action for wrongful discharge. We found it especially important that the plaintiff "chose to litigate in the administrative setting" before bringing a tort claim. *Id.* at 313; *see also id.* at 318 n.10 (noting plaintiff had a choice). We never doubted the appropriateness of bringing a tort claim instead of or in addition to a PERC action because both administrative and tort claims were contemplated by the legislature. *Id.* at 316. Lower courts and litigants would fairly ponder why we have been so careful to define the limits of collateral estoppel in a wrongful discharge action that follows a PERC action if, at the end of the day, no such action were possible.

In short, we refuse to disregard the body of law we have developed addressing wrongful termination claims in the context of statutory schemes providing for administrative remedies. In the particular context of PERC, *Smith* and later cases recognize that the limited statutory remedies under chapter 41.56 RCW do not foreclose more complete tort remedies for wrongful discharge. *Smith* cannot be dismissed as concerned with only personal compensation and not public policy, nor can it be recast as having nothing to do with the jeopardy question.

Recognizing the continued vitality of *Smith* does not require retreat from our recent cases. The asserted tension between *Smith, Korslund,* and *Cudney* eases upon a closer examination of the administrative remedies at issue in each case. Neither *Korslund* nor *Cudney* involved an administrative scheme that this court had previously recognized is *inadequate* to vindicate an important public policy. *See Korslund,* 156 Wn.2d at 181, 183 (involving federal ERA); *Cudney,* 172 Wn.2d at 526-27 (involving WISHA and Washington laws prohibiting driving under the influence). In contrast, in *Smith* the court emphasized that the administrative remedies allowed through PERC fall short of addressing the broader *public interests* at issue in a wrongful discharge tort claim. *See* 139 Wn.2d at 805 ("But while the contractual remedies available to certain employees redress violations of the underlying employment contract, these remedies do not protect an employee who is fired not only 'for cause' but also in violation of public policy."); *id.* at 809 (rejecting exhaustion requirement as counter to "fundamental distinction between a wrongful discharge action based in tort and an action based upon an alleged violation of an employment contract or a [collective bargaining agreement]"). *Smith* unequivocally held that PERC is inadequate to vindicate the public policy at issue when an employee is terminated in retaliation for asserting collective bargaining rights. Nothing in *Korslund* or *Cudney* provides a basis to second-guess this aspect of *Smith*.

Moreover, we should not reach to expand the jeopardy analysis of *Korslund* or *Cudney* when the very statutory scheme that announces the public policy at

issue also cautions that its administrative remedies are intended to be additional to other remedies. PERC contains such a provision, RCW 41.56.905, which states, "The provisions of this chapter are intended to be additional to other remedies and shall be liberally construed to accomplish their purpose." No similar language was identified under the statutory schemes at issue in *Korslund* or *Cudney*. This language is significant because it respects the legislative choice to allow a wrongfully discharged employee to pursue additional remedies beyond those provided by statute. It is the strongest possible evidence that the statutory remedies are not adequate to vindicate a violation of public policy.

Each public policy tort claim must be evaluated in light of its particular context. We must carefully consider the PERC administrative scheme before us and acknowledge that we have previously held it is not adequate to vindicate public policy when an employee is terminated for asserting collective bargaining rights. *Korslund* and *Cudney* addressed different statutory schemes and do not dictate the outcome here. Consistent with *Smith*, we hold that the statutory remedies available to public employees through PERC are inadequate—and a wrongful discharge tort claim is therefore necessary—to vindicate the important public policy recognized in chapter 41.56 RCW. Accordingly, we reverse the lower court's order granting summary judgment of dismissal and remand for further proceedings consistent with this opinion.

WE CONCUR:

No. 83882-8

MADSEN, C.J. (concurring in dissent)—I agree with the dissent, but write separately to emphasize several key points. First, the majority concedes that the issue in the present case is whether the jeopardy element is established. Common sense tells us this means we should apply the Perritt jeopardy analysis, given that we adopted this analysis in *Gardner v. Loomis Armored, Inc.*, 128 Wn.2d 931, 913 P.2d 377 (1996). However, the majority does not cite a single case in which this court ever addressed the jeopardy element of the public policy tort claim with regard to remedies in chapter 41.56 RCW.

Instead, according to the majority *Smith v. Bates Technical College*, 139 Wn.2d 793, 799-800, 991 P.2d 1135 (2000), necessarily recognized that the jeopardy prong of the analysis was met there and *Smith* is controlling precedent. The majority thus attempts to bind this court to a theoretical holding purportedly implicit in *Smith*.

But *Smith* is not controlling. It never addressed the jeopardy prong of the Perritt analysis. At most, it assumed the plaintiff would be able to satisfy the elements of the cause of action. "'In cases where a legal theory is not discussed in the opinion, that case is not controlling on a future case where the legal theory is properly raised.'" *State ex rel. Gallwey v. Grimm*, 146 Wn.2d 445, 459, 48 P.3d 274 (2002) (quoting *Berschauer/Phillips Constr. Co. v. Seattle Sch. Dist. No. 1*, 124 Wn.2d 816, 824, 881

P.2d 986 (1994)).  Questions lurking in the record that are not ruled on "'are not considered to have been decided so as to constitute precedent.'"  *Id.* (quoting *Berschauer/Phillips*, 124 Wn.2d at 824 and citing *Webster v. Fall*, 266 U.S. 507, 511, 45 S. Ct. 148, 69 L. Ed. 411 (1925)).  As the court in *ETCO, Inc. v. Department of Labor & Industries*, 66 Wn. App. 302, 307, 831 P.2d 1133 (1992), aptly stated:

> Where the literal words of a court opinion appear to control an issue, but where the court did not in fact address or consider the issue, the ruling is not dispositive and may be reexamined without violating stare decisis in the same court or without violating an intermediate appellate court's duty to accept the rulings of the Supreme Court.  "An opinion is not authority for what is not mentioned therein and what does not appear to have been suggested to the court by which the opinion was rendered." *Continental Mutual Savings Bank v. Elliot*, 166 Wash. 283, 300, 6 P.2d 638 (1932).

*Accord Cazzanigi v. Gen. Elec. Credit Corp.*, 132 Wn.2d 433, 442-43, 938 P.2d 819 (1997) (despite a prior case appearing to rule that a certain statute did not apply retroactively, the court concluded that the prior case did not address the issue or arguments that were raised in the later case and declined to find the prior case controlling).

The apparent assumption in *Smith* that the plaintiff would be able to satisfy all of the elements of the tort claim cannot substitute for an actual analysis and holding on the jeopardy element, specifically the adequacy of existing protections for the public policy.

The majority says, though, that in *Smith* the second issue addressed was whether "the plaintiff's tort claim [had to] be dismissed for failure to pursue statutory remedies through PERC [(Public Employees Relations Commission)]" and that this is similar to the issue as in the present case.  Majority at 7.  But the issues at the pages cited by the

2

majority were whether there was a clear mandate of public policy and whether the plaintiff exhausted administrative remedies (or had to exhaust administrative remedies). *See Smith*, 139 Wn.2d at 808-11.

The numerous statements the majority lifts out of context should not be considered severed from the analysis in which they appear. For example, the majority says that "[t]o accept the proposition that *Smith* failed to consider the adequacy of PERC remedies, we would have to disregard its holding recognizing 'the fundamental distinction between a wrongful discharge action based in tort and an action [through PERC] based upon an alleged violation of an employment contract or a [collective bargaining agreement.]'" Majority at 10 (alteration in original) (quoting *Smith*, 139 Wn.2d at 809).

But the context belies the majority's recitation of this supposed "holding." Here is what actually appears in *Smith*:

> Bates [(the employer)] argues that because Smith did not pursue her ULPs [(unfair labor practice claims)] with PERC [(Public Employees Relations Commission)], she did not exhaust her administrative remedies to the extent required by law. Due to this failure Bates asserts the trial court properly exercised its discretion to dismiss Smith's wrongful termination claim. But Bates' argument ignores the fundamental distinction between a wrongful discharge action based in tort and an action based upon an alleged violation of an employment contract or a CBA [(collective bargaining agreement)]. As we have explained, the tort of wrongful discharge seeks to vindicate the public interest in prohibiting employers from acting in a manner contrary to fundamental public policy. Because the right to be free from wrongful termination in violation of public policy is independent of any underlying contractual agreement or civil service law, we conclude Smith should not be required to exhaust her contractual or administrative remedies.

*Smith*, 139 Wn.2d at 808-09. As can be seen, the court was addressing the exhaustion of remedies issue, and it is an extraordinary stretch to describe the sentence in the middle of this paragraph as a "holding" compelling us to conclude that the court considered the adequacy of remedies under the jeopardy prong of the Perritt public policy wrongful discharge action.

The majority is so thin in terms of actual support for what it says that it relies on things such as a comparison made between *Korslund v. DynCorp Tri-Cities Services, Inc.*, 156 Wn.2d 168, 182, 125 P.3d 119 (2005), and *Smith* appearing in the concurrence-dissent in *Danny v. Laidlaw Transit Services, Inc.*, 165 Wn.2d 200, 232-33 193 P.3d 128 (2008) (Madsen, J., concurring-dissenting). Majority at 10. Whatever else might be said, the focus of that concurrence-dissent was not remedies but instead the public policy, with the writing justice's view being that there was no clear mandate of public policy shown in the case. In any event, there was certainly no recognition that *Smith* contained an actual jeopardy analysis.

The majority also cites a number of other cases in an effort to create the impression the issue is resolved, but none of the cases addresses the jeopardy element with regard to remedies under chapter 41.56 RCW and whether these remedies adequately protect the claimed public policy. As examples, the majority refers to *Smith*'s discussion of *Reninger v. State Department of Corrections*, 134 Wn.2d 437, 951 P.2d 782 (1998), and *Christensen v. Grant County Hospital District No. 1*, 152 Wn.2d 299, 96 P.3d 957 (2004). Majority at 11-12. These cases concern exhaustion of administrative

remedies and collateral estoppel, respectively. As pointed out at the outset of this opinion, cases that appear to make assumptions about legal conclusions in a case but do not actually address them are not binding on the assumptions. Insofar as the majority believes *Reninger* and *Christensen* are relevant on the jeopardy element, the belief is misplaced.

The majority's reference to a "body of law . . . addressing wrongful termination claims in the context of statutory schemes providing for administrative remedies" must be viewed skeptically because it is obvious that there is no body of law regarding whether remedies under chapter 41.56 RCW are adequate to protect a clear mandate of public policy. Majority at 12.

The bottom line is that there is simply no analysis of the jeopardy prong in *Smith* and, more specifically, there is absolutely no analysis of whether existing laws provide an adequate alternative means for promoting the public policy such that it is unnecessary to recognize a private action wrongful discharge claim in order to protect the public policy. *See Korslund*, 156 Wn.2d at 182 (discussing the required showing). More strikingly, there is no analysis of the jeopardy prong in the majority.

The majority has lost sight of the nature of the tort. The tort for wrongful discharge in violation of public policy was originally created by this court as a judicial exception to the terminable at will doctrine. *Thompson v. St. Regis Paper Co.*, 102 Wn.2d 219, 232, 685 P.2d 1081 (1984). It has from that time to the present been characterized as a "narrow" public policy exception. *Id.*; *see also, e.g., Cudney v.*

5

*ALSCO, Inc.*, 172 Wn.2d 524, 529, 259 P.23d 244 (2011); *Roe v. TeleTech Customer Care Mgmt. (Colorado) LLC*, 171 Wn.2d 736, 755, 257 P.3d 586 (2011); *Ford v. Trendwest Resorts, Inc.*, 146 Wn.2d 146, 154, 43 P.3d 1223 (2002); *Sedlacek v. Hillis*, 145 Wn.2d 379, 385, 36 P.3d 1014 (2001); *Snyder v. Med. Serv. Corp. of E. Wash.*, 145 Wn.2d 233, 239, 35 P.3d 1158 (2001); *Havens v. C&D Plastics, Inc.*, 124 Wn.2d 158, 177, 876 P.2d 435 (1994); *Wilmot v. Kaiser Aluminum. & Chem. Corp.*, 118 Wn.2d 46, 53, 821 P.2d 18 (1991); *Grimwood v. Univ. of Puget Sound, Inc.*, 110 Wn.2d 355, 367, 753 P.2d 517 (1988); *Farnam v. CRISTA Ministries*, 116 Wn.2d 659, 807 P.2d 830 (1991). Rather than a narrowly recognized tort claim, the majority bends over backwards to cobble together disparate cases in an effort to convince the reader that there is a body of law supporting the conclusion that *Smith* controls here.

But as the dissent correctly says, there is no holding on the jeopardy prong of the Perrit analysis in *Smith*. It is not precedential on this point. It is not controlling. *Smith* should not be followed as if it is controlling.

The purpose of the Perritt jeopardy analysis is to determine whether a clear mandate of public policy would be unprotected in the absence of the private public policy wrongful discharge claim. The plaintiff has to show that "discouraging the [employee's] conduct" that led to the discharge "would jeopardize the public policy (the jeopardy element)." *Gardner*, 128 Wn.2d at 941 (citing HENRY H. PERRITT JR., WORKPLACE TORTS: RIGHTS AND LIABILITIES § 3.7 (1991)). This means that the plaintiff here was required to establish that he engaged in particular conduct that relates directly to the

public policy or was necessary for effective enforcement of the public policy, *Hubbard v. Spokane County*, 146 Wn.2d 699, 713, 50 P.3d 602 (2002); *Gardner*, 128 Wn.2d at 945, and that discouraging the conduct he engaged in would jeopardize the public policy, *see Ellis v. City of Seattle*, 142 Wn.2d 450, 460, 13 P.3d 1065 (2000). He had to show that other means of promoting the public policy are inadequate. *Hubbard*, 146 Wn.2d at 713; *Gardner*, 128 Wn.2d at 945.

The plaintiff failed to make the requisite showing. When there are adequate means to protect the public policy regardless of whether an employer is exposed to the wrongful discharge tort claim, then a tort action should not be recognized since the public policy is not jeopardized by the employment action.

Finally, it is critical to bear in mind that the issue is not whether the employee will be adequately compensated, fully compensated, or compensated to a greater extent, or for more injuries than if the public policy tort is not recognized. Instead, the inquiry is solely to decide whether the tort must be recognized to ensure that the public policy at issue is adequately protected.

I concur in the dissent because it correctly concludes that the Piels are unable to satisfy the jeopardy element of their tort claim and that *Smith* is not controlling on the jeopardy prong of the claim. Contrary to the majority's incorrect conclusion, *Korslund* and *Cudney* are the relevant precedent that must be followed if the court is to adhere to the core purpose of the tort of wrongful discharge in violation of public policy. Instead

7

of treating *Smith* as controlling on an issue it never addressed, the majority should apply

the jeopardy prong analysis from *Korslund* and *Cudney*.

No. 83882-8
Madsen, C.J. (concurring in dissent)

Madsen, C.J.

No. 83882-8

J.M. JOHNSON, J. (dissenting)—The Federal Way Police Department discharged Officer Robert Piel for telling fellow officers in a meeting at the department offices that he had considered "murdering or shooting Department members." Clerk's Papers (CP) at 279. As an additional ground for termination, the department determined that Officer Piel had been "dishonest" when he was questioned about these murder comments. CP at 280-81.

Officer Piel and his wife sued the city of Federal Way for wrongful termination in violation of public policy (WTVP), claiming Officer Piel was actually fired for engaging in statutorily protected collective bargaining activities. The trial court granted the city summary judgment, holding that the Piels' tort claim was barred because the statutory remedies available were adequate to protect the public policies expressed in chapter 41.56

1

RCW. Because the majority completely fails to conduct a jeopardy analysis, instead choosing to read a holding into *Smith v. Bates Technical College*, I dissent. 139 Wn.2d 793, 991 P.2d 1135 (2000). We should affirm the trial court; the remedies provided and available under RCW 41.56.160 adequately protect public employee collective bargaining rights.

ANALYSIS

I.   The Jeopardy Element

Under Washington common law, an employer may generally discharge an employee with or without cause absent an agreement to the contrary. *Roberts v. Atl. Richfield Co.*, 88 Wn.2d 887, 891, 568 P.2d 764 (1977). The tort of WTVP is a common law exception to the at-will employment doctrine. *Gardner v. Loomis Armored, Inc.*, 128 Wn.2d 931, 935-36, 913 P.2d 377 (1996). "The policy underlying the exception is that the common law doctrine cannot be used to shield an employer's action which otherwise frustrates a clear manifestation of public policy." *Thompson v. St. Regis Paper Co.*, 102 Wn.2d 219, 231, 685 P.2d 1081 (1984).

A WTVP claim requires the plaintiff to establish four elements: (1) "the existence of a clear public policy (the *clarity* element)," (2) that

2

"discouraging the conduct in which [the plaintiff] engaged would jeopardize the public policy (the *jeopardy* element)," (3) that the protected conduct "caused the dismissal (the *causation* element)," and (4) that the employer-defendant does not have a "justification for the dismissal (the *absence of justification* element)." *Gardner*, 128 Wn.2d at 941. We have "always been mindful that the . . . [WTVP] tort is narrow and should be 'applied cautiously.'" *Danny v. Laidlaw Transit Servs., Inc.*, 165 Wn.2d 200, 208, 193 P.3d 128 (2008) (quoting *Sedlacek v. Hillis*, 145 Wn.2d 379, 390, 36 P.3d 1014 (2001)). In the present case, we were asked to examine only the jeopardy element.

To establish jeopardy, a plaintiff must show that he or she "engaged in particular conduct, and the conduct directly relates to the public policy, or was necessary for the effective enforcement of the public policy." *Gardner*, 128 Wn.2d at 945 (emphasis omitted). We have stated this requires a plaintiff to "show that other means of promoting the public policy are inadequate and that the actions the plaintiff took were the 'only available adequate means' to promote the public policy." *Cudney v. ALSCO, Inc.*, 172 Wn.2d 524, 530, 259 P.3d 244 (2011) (citation and emphasis omitted) (quoting *Danny*, 165 Wn.2d at 222). This is a question of law so long as our

3

"inquiry is limited to examining existing laws to determine whether they provide adequate alternative means of promoting the public policy." *Korslund v. DynCorp Tri-Cities Servs., Inc.*, 156 Wn.2d 168, 182, 125 P.3d 119 (2005).

II.   The *Smith* Court Did Not Hold that The Remedies Available in RCW 41.56.160 Are Inadequate To Protect Public Employee Collective Bargaining and Union Rights

In order to avoid having to conduct a jeopardy analysis, the majority twists *Smith* into something it is not. In *Smith*, this court was asked to answer three distinct questions and only those questions. First, "whether the common law tort of . . . [WTVP] extends to employees who may be terminated only for cause." *Smith*, 139 Wn.2d at 796. This court answered this first question in the affirmative. *Id.* at 807. Second, "whether an employee must first exhaust administrative or contractual remedies before pursuing such an action." *Id.* at 796. This court answered this second question in the negative. *Id.* at 811. Third, "whether a public employee establishes a cause of action under 42 U.S.C. § 1983 [through the First Amendment to the United States Constitution] when a public agency discharges her in retaliation for filing an employment related grievance." *Id.* at 796. This court answered this third question in the negative. *Id.* at 815-

16. Nowhere in *Smith* was this court asked if the Public Employees Relations Commission (PERC) adequately protected the public policy found in chapter 41.56 RCW.

Tellingly, the majority does not explain why the *Smith* court fails to even mention "jeopardy," let alone state that it is conducting a jeopardy analysis. *Smith* was decided some four years after this court adopted the Perritt test, which was implemented to clarify this court's WTVP analysis by breaking it up into four distinct elements. *See Gardner*, 128 Wn.2d at 941. It is logical to assume that if the *Smith* court meant to address the jeopardy element, it would have done so expressly.

In essence, the majority miscomprehends the procedural posture of *Smith*. The trial court granted the college summary judgment on the grounds that Smith had failed to exhaust her administrative remedies and because she was not an at-will employee. 139 Wn.2d at 799. In remanding the case, the court expected the trial court to walk through the four-step analysis, including that of the jeopardy prong, for the first time. In other words, the *Smith* court was never asked to resolve the jeopardy question; the court was deciding whether the trial court should even get to the jeopardy question.

The majority's miscomprehension is further demonstrated by its failure to acknowledge that the *Smith* court was not asked whether for-cause *public* employees are entitled to bring a WTVP tort claim, but rather whether for-cause employees in general can bring such a tort. *Smith*'s broader effect is illustrated by the fact that as a result of the decision, private sector for-cause employees do not have to exhaust their administrative or contractual remedies as a prerequisite to pursuing a WTVP claim. It is important to note that the *Smith* court used terminology consistent with its awareness of the broader implications of its decision. For example, the court used terms like "contractual employees" instead of something like "unionized public employees." *See id.* at 805.

Accordingly, the majority dwells too much on the language in *Smith*, comparing and contrasting a tort claim with an action based on an employment contract or collective bargaining agreement (CBA) in its attempt to convince us that *Smith* answered the jeopardy question. *Id.* at 807-09. These statements provide the rationale for why the *Smith* court extended the tort to for-cause employees in general but are insufficient as an analysis of the adequacy of the remedies found in chapter 41.56 RCW. To the extent the *Smith* court's statements appear to answer the jeopardy

question, they show a complete lack of understanding of the jeopardy prong and amount to dicta.

For example, the *Smith* court commented that there is a "fundamental distinction between a wrongful discharge action based in tort and an action based upon an alleged violation of an employment contract or a CBA" and that "additional and distinct remedies would be available . . . in tort." *Id.* at 809, 805. This statement wrongly suggests that a WTVP claim should always be available, regardless of the existence of alternative remedies, because only a tort can provide tort remedies. Another example is the *Smith* court's statement that WTVP claims should be available to for-cause employees because such a cause of action "is independent of any . . . statute." *Id.* at 811. Yes, there is no WTVP statute, but that does not mean that existing statutory remedies are inadequate. The very essence of the jeopardy analysis, which is conducted to determine whether a tort action is even available, is an examination of the statutory remedies. If these statements are an accurate reflection of our law, then *Korslund* and *Cudney* were wrongly decided and a WTVP action should always be available. Instead, these comments are overbroad and reflect the fact that the *Smith* court was not engaging in a jeopardy analysis of PERC, but rather was

7

giving its rationale for extending the availability of WTVP claims to for-cause employees in general. The *Smith* court's conclusory citation to the lack of emotional distress damages available through PERC and to the fact that PERC cannot administer WTVP claims does not provide a satisfactory analysis of the adequacy of the PERC remedies. *Id.* at 805. In sum, after *Smith* the question remains whether PERC adequately protects the public policy (public employee collective bargaining and union rights) it embodies.

III.    The Remedies Available in RCW 41.56.160 Adequately Protect Public Employee Collective Bargaining Rights

Our recent decisions in *Korslund* and *Cudney* provide a solid foundation for this court to decide that the PERC remedies are more than adequate. In *Korslund*, three employees of DynCorp Tri-Cities Services (DynCorp) brought suit alleging retaliation and harassment by DynCorp management after the plaintiffs had reported safety violations and mismanagement. Two of the employees claimed constructive termination in violation of the public policy expressed in the federal Energy Reorganization Act of 1974 (ERA), 42 U.S.C. § 5851(a)(1)(A). 156 Wn.2d at 181. The ERA prohibits an employer from discharging or discriminating against an employee who reports a violation of the Atomic Energy Act of 1954, 42

8

U.S.C. § 2011. *Id.* The trial court granted summary judgment in favor of DynCorp, which we affirmed.

We first noted that the jeopardy element of a WTVP claim requires the plaintiff to prove two things: (1) "that discouraging the conduct he or she engaged in would jeopardize the public policy" and (2) "that other means of promoting the public policy are inadequate." *Id.* at 181-82 (citing *Hubbard v. Spokane County*, 146 Wn.2d 699, 713, 50 P.3d 602 (2002)). The ERA provides an administrative process for adjudicating whistleblower complaints. *Id.* at 182. Remedies under the ERA may require the violator to take affirmative action to abate the violations, reinstate the complainant with back pay, or pay compensatory damages, attorney fees, and expert witness fees. *Id.* (citing 42 U.S.C. § 5851(b)(2)(B)). We determined these remedies were adequate as a matter of law to protect the public policy expressed in the ERA. *Id.* at 183. Accordingly, we held that the *Korslund* plaintiffs' WTVP claim was barred. *Id.*

The Piels claim the trial court held that *Korslund* overruled *Smith* sub silentio.[1] The city argues that *Smith* and *Korslund* concern entirely different issues. The city is correct.

The rule of law established in *Korslund* does not directly contradict that set forth in *Smith*. The *Korslund* holding focuses on the adequacy of alternative remedies in terms of protecting the *public policy* at issue. In contrast, *Smith* held that a WTVP claim was available to both at-will and for-cause employees and that a plaintiff need not exhaust administrative remedies before pursuing a WTVP claim because such remedies may not fully compensate the plaintiff's *private interests*. As I explained above, the *Smith* court was not asked to address whether the administrative remedies available adequately protected the public interest at stake in that case. Indeed, *Smith* did not even mention the jeopardy element, which is at issue here. Thus, the two cases may be harmonized.

Read together, *Smith* and *Korslund* provide that a plaintiff need not exhaust administrative remedies for his or her *personal* compensation when

---

[1] A holding from a prior case may be overruled sub silentio if it is directly contradicted by a later holding. *Lunsford v. Saberhagen Holdings, Inc.*, 166 Wn.2d 264, 280, 208 P.3d 1092 (2009).

pursuing a WTVP claim, but such a claim is unavailable if adequate alternative means exist to protect the *public* interest. This is logical given that the WTVP claim exists primarily to protect public interests, not private. *See Hubbard*, 146 Wn.2d at 717 ("The other means of promoting the public policy need not be available to a particular individual so long as the other means are adequate to safeguard the public policy.").

This interpretation is supported by our recent decision in *Cudney*, 172 Wn.2d 524.[2] In *Cudney*, we addressed a similar issue. We noted our prior decision in *Wilmot v. Kaiser Aluminum & Chemical Corp.*, 118 Wn.2d 46, 821 P.2d 18 (1991) did not change our jeopardy analysis in *Korslund*. *Cudney*, 172 Wn.2d at 535-36. In *Wilmot*, we held RCW 51.48.025 did not provide a mandatory and exclusive remedy for an employee allegedly fired for filing a workers' compensation claim. But, we said, this was an "entirely separate issue[]" from whether the means of protecting a given public policy are adequate apart from a WTVP claim. *Cudney*, 172 Wn.2d at 535 ("Even if . . . [the] statute is not mandatory and exclusive, as in *Wilmot*, . . . [the

---

[2] Our consideration of the Piels' case was stayed pending the resolution of *Cudney*.

Washington Industrial Safety and Health Act (WISHA, chapter 49.17 RCW)] is still adequate to protect public policy.").

Cudney alleged he was terminated in violation of public policy for reporting that one of his managers drove a company vehicle while intoxicated. *Id.* at 527. The case was removed to the United States District Court for the Eastern District of Washington. The federal district court certified to us the questions paraphrased here: (1) whether WISHA adequately promoted the public policy of ensuring workplace safety and protecting workers who report safety violations so as to preclude a terminated employee's WTVP claim and (2) whether the State's driving under the influence laws adequately promoted the public policy of protecting the public from drunk drivers so as to preclude a terminated employee's WTVP claim. *Id.*

We recognized that *Korslund* was "[t]he controlling case, governing whether statutory remedies are adequate to promote a given public policy." *Cudney*, 172 Wn.2d at 532. We therefore used the ERA as a guidepost, as it had been found to be adequate in *Korslund*. *Id.* Both WISHA and the ERA allow an administrative agency to perform investigations and allow plaintiffs to bring claims if the administrative agency does not take action. *Id.*

12

Moreover, WISHA authorizes the superior court to order all appropriate relief, not limited to back pay. *Id.* at 531-32. Remedies available under the ERA are more limited but were still found adequate in *Korslund*. Therefore, we held the remedies available under WISHA to be "more than adequate." *Id.* at 533. This was so even though a claim under WISHA carries a 30-day statute of limitations. *Id.* at 534 (citing WAC 296–360–030(4)). Furthermore, we considered it irrelevant that the lawsuit available under WISHA was handled by an administrative agency and not the complainant. This is because a WTVP claim exists to protect the public policy not private concerns. *Id.* at 534 n.3 ("[T]he point of the jeopardy prong of the analysis . . . is to consider whether the statutory protections are *adequate to protect the public policy*, not whether the claimant could recover more through a tort claim.").

Using WISHA as a guidepost, the remedies available under chapter 41.56 RCW are adequate to protect the public policy embodied therein. RCW 41.56.160(1) empowers and requires PERC, like the Department of Labor and Industries under WISHA, to "prevent any unfair labor practice" and to issue appropriate remedial orders to that end. If PERC determines an unfair labor practice has occurred,

13

the commission shall issue and cause to be served upon the person an order requiring the person to cease and desist from such unfair labor practice, and to take such affirmative action as will effectuate the purposes and policy of this chapter, such as the payment of damages and reinstatement of employees.

RCW 41.56.160(2). Even legal expenses may be recovered. *See, e.g., Wash. Fed'n of State Emps. v. Bd. of Trs. of Cent. Wash. Univ.*, 93 Wn.2d 60, 69, 605 P.2d 1252 (1980) (holding that remedial action under former RCW 41.56.160 (1975) may include an award of attorney fees). To enforce such orders, like the Department of Labor and Industries under WISHA, PERC may invoke the power of the superior courts. RCW 41.56.160(3).

RCW 41.56.160(1) requires the aggrieved employee to file a complaint within six months of the unfair labor practice. That period, however, is more than adequate for the same reason we articulated in *Cudney*: "[E]mployees will almost always receive *immediate* notice of their own termination" or other interference with their union rights. 172 Wn.2d at 534. Significantly, six months is appreciably longer than the 30 days we considered sufficient in *Cudney*. *Id.* at 533-34.

Chapter 41.56 RCW specifies certain damages (damages for emotional distress are unavailable). *See Smith*, 139 Wn.2d at 806. This fact, however, is irrelevant as the remedies that *are available* are adequate to

14

protect the *public* policy. In *Cudney*, we emphasized that whether the jeopardy element is met hinges on the adequacy of the alternative remedies available to protect the public policy, not on whether the remedies fully compensate the individual claimant. 172 Wn.2d at 534 n.3.

In sum, if PERC determines that a defendant engaged in an unfair labor practice it must issue appropriate remedial orders, including those to cease and desist, pay damages, reinstate a terminated employee, and pay attorney fees. RCW 41.56.160. PERC is also authorized to take other affirmative action as necessary to effectuate the purpose and policy of chapter 41.56 RCW. RCW 41.56.160(2). Like with WISHA, chapter 41.56 RCW remedies are sufficiently adequate to protect public employees' ability to exercise their collective bargaining rights.

The majority makes much of RCW 41.56.905, in that it reflects the legislature's intent that the remedies available through PERC not be mandatory or exclusive. In *Cudney*, however, we held that the jeopardy analysis is separate and distinct from the determination of whether statutory remedies are mandatory or exclusive. *Id.* at 535. Consequently, RCW 41.56.905 does not require us to find the PERC remedies inadequate. As *Korslund* and *Cudney* illustrate, this court determines the scope of this

15

common law tort remedy it created. There is no WTVP statute. Moreover, there are many other remedies available to public employees who feel they are being mistreated at work. For example, chapter 41.06 RCW (state civil service law) includes protections for public employees. Certainly, if the legislature decided to pass additional legislation that served to provide supplementary protection for public employees' collective bargaining rights, it would qualify as an "other remedy." The legislature wanted to leave itself and the courts the room to create additional remedies. RCW 41.56.905 is not a legislative declaration that chapter 41.56 RCW is inadequate.

Additionally, the majority's worry that holding the PERC remedies adequate will destroy our precedent allowing WTVP claims to coexist with administrative remedies is overblown. The majority is right when it says that there are other statutory schemes that can coexist with WTVP claims. Chapter 41.56 RCW, however, is not one of them because it adequately protects the public policy in question. The majority forgets that a WTVP claims is a judicial creation that we apply narrowly. *See Danny*, 165 Wn.2d at 208. This court has clearly acknowledged that some statutory schemes will adequately protect the public policy they embody and therefore will

foreclose a plaintiff's access to a claim of WTVP. *See Korslund*, 156 Wn.2d at 183; *Cudney*, 172 Wn.2d at 533.

The majority's concern that such a holding would unsettle our law governing collateral estoppel is similarly exaggerated. If this court decided that the PERC remedies are adequate, then it would still be the case that pursuing administrative proceedings may collaterally estop a prospective plaintiff from filing a tort claim. *See Christensen v. Grant County Hosp. Dist. No. 1*, 152 Wn.2d 299, 321, 96 P.3d 957 (2004). The majority cites the *Christensen* court's assumption that a WTVP tort action is available to a public employee who has not yet brought an administrative action through PERC as evidence that we already decided that the PERC remedies are inadequate. The central question in *Christensen*, however, was whether a completed PERC administrative action collaterally estopped the plaintiff from bringing a WTVP tort action, not whether the PERC remedies were adequate to protect the public policy embodied in chapter 41.56 RCW. *Id.* at 302. In the interest of judicial restraint, this court properly tries to limit itself to answering only the questions posed by the petitioners. The adequacy question was not posed to the *Christensen* court as it was not posed to the court in *Smith*.

CONCLUSION

The Piels are unable to satisfy the jeopardy element of their WTVP claim. *Smith* stands for the proposition that both at-will and for-cause employees can bring WTVP claims and that such plaintiffs need not exhaust administrative remedies before suing to obtain personal compensation. Our recent decisions in *Korslund* and *Cudney* made clear that where alternative remedies adequately protect the public policy in question, separate WTVP claims are unavailable. WTVP claims exist to ensure the protection of public policy, not to provide individual plaintiffs with additional claims and compensation. The remedies available under chapter 41.56 RCW adequately protect the public policy recognized in that chapter. There is no genuine issue of material fact and the city was entitled to judgment as a matter of law on that claim. Because we should affirm the trial court's order granting summary judgment to the city, I dissent.