[No. 11800-2-III. Division Three. December 20, 1994.]

SUZANNE K. GRAVES, *Appellant*, v. THE DEPARTMENT OF GAME, ET AL, *Respondents*.

*Fred O. Montoya*, for appellant.

*Christine O. Gregoire, Attorney General,* and *Susan M. Edison, Assistant,* for respondents.

Sweeney, J. — Suzanne K. Graves was terminated during her 12-month probationary period with the State of Washington Department of Game. She sued, alleging retaliatory discharge, hostile work environment, and unjust termination due to sexual discrimination or inadequate supervision. The court dismissed the retaliatory discharge claim and directed a verdict for the State on the negligent supervision claim. By special verdict, the jury found for the State on the sexual discrimination claim but was unable to reach a decision on the unjust termination claim.

In a second trial on unjust termination based on inadequate supervision, the jury rendered a verdict for Ms. Graves but awarded her no damages. Her motion to vacate judgment on the sexual discrimination claim and her motion for a judgment notwithstanding the verdict or for a new trial on the issue of damages for unjust termination were denied.

She appeals, contending the court erred in (1) granting summary judgment dismissing her claim of retaliatory discharge; (2) granting a directed verdict dismissing her hostile work environment claim; (3) ruling she was not the prevailing party on the unjust termination verdict because the jury awarded her no damages; (4) denying her motion for judgment notwithstanding the verdict/summary judgment or for a new trial on the issue of damages; and (5) denying her motion to vacate judgment on the sexual discrimination claim. We affirm the summary judgment, directed verdict and denial of the motion to vacate. The State cross-appeals contending the court erred in instructing the jury there was a cause of action for unjust termination based on WAC 356-30-260(3).[1] We reverse the judgment for unjust termination.

## FACTS

Ms. Graves, an experienced fisheries biologist, applied for a newly created position as a Habitat Biologist 4 with the Department of Game in 1983. After an interview with a panel in Olympia, she was put on a register of approved applicants for several district Habitat Biologist 4 positions to be filled across the state.

Region 2 (Okanogan and Douglas counties) was one of the last regions to receive authorization to hire new habitat biologists. Ray Duff, the region 2 manager, sent Tracy Lloyd, a region 2 habitat biologist, to assist in the Olympia interviews. She recommended a female applicant, who was offered the job. After the first applicant turned down the position, the

---

[1]WAC 356-30-260(3) provides:

"The probationary period will provide the appointing authority with the opportunity to observe a new employee's work, to train and aid the new employee in adjustment to the position, and to terminate any employee whose work performance fails to meet the required standards."

Olympia panel recommended Ms. Graves, although it had reservations because of her lack of experience in wildlife matters. Mr. Duff and Ms. Lloyd interviewed Ms. Graves and one other person (a man) on the register and decided to hire Ms. Graves, but both had reservations about the decision from the outset. They were concerned that Ms. Graves' background in fish rather than wildlife would hinder her transition into the position. Mr. Duff also felt the applicants remaining on the register were the "bottom of the barrel".

Ms. Graves began a 12-month probationary employment as the region 2 Habitat Biologist 4 on December 1, 1983, under the direct supervision of Ms. Lloyd. From January 1 through February 26, 1984, Ms. Graves took approved sick leave. Ms. Lloyd completed Ms. Graves' 4-month evaluation in late April 1984. The evaluation was based on approximately 18 days' direct observations of Ms. Graves, telephone contacts with her, written materials completed by her, and reports from co-workers. Ms. Lloyd recommended improvements in the following areas: increased communication with her direct supervisor (Lloyd), restriction of her time to job-related responsibilities, acquisition of wildlife expertise, improved accuracy of timesheets and expense vouchers, restricting work hours, attending meetings, writing more concise permits, using caution in public when making job-related decisions, and improving her work relationship with local personnel. Mr. Duff signed the evaluation with approval. Ms. Lloyd and Ms. Graves discussed the 4-month evaluation in May 1984.

During her employment in region 2, Ms. Graves frequently called Christine Drivdahl, chief of the habitat management division in the wildlife department and one of the Olympia panel members who had recommended Ms. Graves. Ms. Graves complained that Ms. Lloyd was not properly supervising her or helping her adjust to the new position. She also complained Ms. Lloyd was treating her in a hostile manner and she did not like Mr. Duff's attitude. Ms. Drivdahl notified Ms. Lloyd she had received complaints and advised spending more time directly supervising Ms. Graves.

Ms. Lloyd completed a second evaluation in July 1984. This report indicates Ms. Graves' supervisors felt she had not improved her job performance or accomplished the changes they had directed in the previous evaluation. Ms. Graves was notified of her termination on August 14, 1984, almost 8 months into her probationary period. The notice gave two main reasons for her termination: (1) failure to acquire the necessary expertise in wildlife, especially deer, management; and (2) failure to improve in meeting deadlines or attendance at necessary meetings.

Following her termination, Ms. Graves worked cleaning houses and obtained various jobs in the fisheries field [2] until she began full-time employment in the Eastern Washington University fisheries lab in 1989, the position she maintained during her subsequent trials.

She filed a civil rights action on July 29, 1987, alleging discrimination on the basis of sex (RCW 49.60), retaliatory discharge (RCW 49.60.210), and negligent supervision (WAC 356-30-260). On February 14, 1990, she moved for partial summary judgment on the issues of sex discrimination and sexual harassment/hostile work environment, or alternatively, for full summary judgment on the issue of retaliatory discharge. On March 8, the court denied her motions and granted partial summary judgment for the State dismissing the retaliatory discharge claim. On March 15, she moved to amend her complaint to include a claim of retaliation for posttermination conduct preventing her from finding employment. Both the motion to amend and a motion for reconsideration of the March 8 ruling were denied.

The first trial began on March 26, 1990. Upon completion of Ms. Graves' case in chief, the court granted the State's motion for a directed verdict on her claim of negligent supervision. After completion of the State's case, the court dismissed the

---

[2]These positions include the following: 1984, held a job with the State for 1 day as a fish biologist and quit due to car problems; 1985, employed in a fish hatchery; 1986, turned down a county environmentalist position in California due to costs of relocation; and 1987, lost a job as fish technician with the Washington State Department of Fisheries when she was hospitalized and lost a similar position when her vehicle broke down.

hostile work environment/sexual harassment claim on directed verdict. The jury returned a verdict on April 9, finding for the State on the issue of unjust termination on the basis of sex discrimination, but failing to reach a verdict on the issue of unjust termination based on inadequate supervision.

A second trial on the unjust termination claim began on April 22, 1991. The jury found for Ms. Graves on the issue of unjust termination but also found she had not sustained any damages. Her motion for judgment notwithstanding the verdict/summary judgment or for a new trial on the issue of damages was denied and on August 1, 1991, final judgment was entered in favor of the State. This appeal followed.

### RETALIATORY DISCHARGE

██ Ms. Graves first contends the court erred in granting summary judgment on her claim of retaliatory discharge. Summary judgment is appropriate if the pleadings, affidavits, interrogatories and depositions on file show there is no genuine issue as to material facts and the moving party is entitled to judgment as a matter of law. *Havens v. C&D Plastics, Inc.*, 124 Wn.2d 158, 177, 876 P.2d 435 (1994). All facts and reasonable inferences are considered in favor of the nonmoving party and summary judgment is granted only if reasonable minds could reach but one conclusion from the evidence presented. *Swanson v. Liquid Air Corp.*, 118 Wn.2d 512, 518, 826 P.2d 664 (1992).

██ RCW 49.60.210 prohibits an employer from discharging an employee who files a charge, testifies, or assists in a discrimination proceeding or who "oppose[s] any practices forbidden by this chapter . . .".[3] In order to establish the employer violated RCW 49.60.210, the employee must make

---

[3]The "forbidden practice" Ms. Graves contends she opposed here is described in former RCW 49.60.030:

"(1) The right to be free from discrimination because of race, creed, color, national origin, *sex*, or the presence of any sensory, mental, or physical handicap is recognized as and declared to be a civil right. This right shall include, but not be limited to:

"(a) The right to obtain and hold employment without discrimination;" (Italics ours.)

a prima facie case that (1) she engaged in a statutorily protected opposition activity; (2) she was discharged or some other adverse employment action was taken against her; and (3) there is a causal connection between the opposition and the discharge. *Allison v. Housing Auth.*, 59 Wn. App. 624, 626-27, 799 P.2d 1195 (1990), *aff'd*, 118 Wn.2d 79, 821 P.2d 34 (1991). The third requirement is met by establishing that the employee participated in an opposition activity, the employer knew of the opposition activity, and the employee was discharged. *Wilmot v. Kaiser Aluminum & Chem. Corp.*, 118 Wn.2d 46, 69, 821 P.2d 18 (1991), *quoted with approval in Allison*, 118 Wn.2d at 89 n.3.

■ Our state antidiscrimination law closely parallels Title 7 of the United States Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* We therefore look to interpretations of federal law when construing RCW 49.60. *Selberg v. United Pac. Ins. Co.*, 45 Wn. App. 469, 472, 726 P.2d 468, *review denied*, 107 Wn.2d 1017 (1986). "[A]n employee who opposes employment practices reasonably believed to be discriminatory is protected by the 'opposition clause' whether or not the practice is actually discriminatory." *Gifford v. Atchison, T. & S.F. Ry.*, 685 F.2d 1149, 1157 (9th Cir. 1982). Ms. Graves contends her numerous complaints to Ms. Drivdahl in Olympia constituted protected opposition activities. We disagree.

■ Ms. Graves' complaints were not of sexual discrimination. She complained Ms. Lloyd was not spending enough time with her, was not training her sufficiently, and was expecting too much of her. She also concedes that Mr. Duff's hostile "attitude" was due to his feeling he was getting the "bottom of the barrel" when he received the list of applicants which included her name. Her affidavits do not suggest complaints of discrimination on the basis of sex. The court therefore properly granted summary judgment on the claim of retaliatory discharge.

### Sexual Harassment

Ms. Graves next contends the trial court erred in directing a verdict for the State, dismissing her claim of sexual harassment/hostile work environment. Sexual harassment

is a form of sexual discrimination and is a violation of RCW 49.60.180(3).[4]

In order to establish sexual harassment in the work environment, the employee must prove the harassment (1) was unwelcome, (2) was because of sex, (3) affected the terms or conditions of employment, and (4) can be imputed to the employer. *Delahunty v. Cahoon*, 66 Wn. App. 829, 835-36, 832 P.2d 1378 (1992). A directed verdict is appropriate if,

> when viewing the material evidence most favorable to the nonmoving party, the court can say, as a matter of law, that there is no substantial evidence or reasonable inferences to sustain a verdict for the nonmoving party. The requirement of substantial evidence necessitates that the evidence be such that it would convince "an unprejudiced, thinking mind".

(Footnote and citation omitted.) *Industrial Indem. Co. of Northwest, Inc. v. Kallevig*, 114 Wn.2d 907, 915-16, 792 P.2d 520, 7 A.L.R.5th 1014 (1990), *quoted in Hizey v. Carpenter*, 119 Wn.2d 251, 271-72, 830 P.2d 646 (1992). The trial court has no discretion; if there is any justifiable evidence supporting a verdict in favor of the nonmoving party, the question is for the jury. *Lewis v. Doll*, 53 Wn. App. 203, 207, 765 P.2d 1341, *review denied*, 112 Wn.2d 1027 (1989).

"Unwelcome" harassment is undesirable or offensive behavior which the employee did not solicit or incite. *Glasgow v. Georgia-Pacific Corp.*, 103 Wn.2d 401, 406, 693 P.2d 708 (1985). Ms. Graves asserts that Mr. Duff asked her during her job interview how she expected to learn about wildlife or to deal with cattlemen if she did not cuss, ride a horse, chew "snoose", hunt or shoot a gun. Mr. Duff testified he made the comment jokingly, in an attempt to "break the ice" and relieve some of Ms. Graves' nervousness.[5] On another

---

[4]The statute provides, in part:

"It is an unfair practice for any employer:

" . . . .

"(3) To discriminate against any person in compensation or in other terms or conditions of employment because of age, sex, marital status, race, creed, color, national origin, or the presence of any sensory, mental, or physical disability . . .".

[5]Significantly, the Olympia interviewing panel probably also asked Ms. Graves if she had experience in hunting or fishing. According to Ms. Drivdahl, every ap-

occasion, when Mr. Duff heard she was buying a mobile home in the area, he allegedly stated, "I wouldn't put too much money in that mobile home if I were you. You might not be around very long." He denies making the statement.

■ Even assuming both statements were made, neither constitutes the level of pervasive offensive behavior which would create a climate of sexual harassment. The behavior must be pervasive enough to affect the conditions or terms of Ms. Graves' employment and must create an abusive work environment. We look to the totality of the circumstances to determine whether the harassment was "sufficiently severe and persistent to seriously affect the emotional or psychological well being" of the employee. *Glasgow*, at 406. Although Ms. Graves' complaints show she felt her work environment was hostile, she again fails to provide evidence the hostility was due to her sex or due to the actions of Mr. Duff. The hunt, chew "snoose" or ride a horse statement, when viewed in context, refers to the close cooperation required, by the position, with hunters and ranchers. Ms. Lloyd, Ms. Graves' direct supervisor, was in contact with her much more than Mr. Duff. Although Ms. Graves contends Ms. Lloyd's hostility toward her was indirectly the result of Mr. Duff's sexual bias, there is nothing in this record to substantiate this claim.

■ The last element of a sexual harassment claim, imputation of the harassment to the employer, requires the employee to prove the employer knew or should have known of the harassment and failed to take prompt corrective action. *Glasgow*, at 407. As we have noted, Ms. Graves' "employer", Ms. Drivdahl, denies she heard complaints of sexual harassment or discrimination from Ms. Graves until after her termination. The evidence is therefore insufficient to impute this knowledge to her employer.

UNJUST TERMINATION

The State assigns error to submitting the issue of unjust termination to the jury. Ms. Graves assigns error to the "$0"

---

plicant was asked this because the wildlife department's primary constituents are hunters and fishermen, and the panel wanted to avoid candidates who have antagonism toward those sports.

verdict on the claim of unjust termination. The State contends the court erred in instructing the jury that WAC 356-30-260(3) imposed a duty on the employer to train her during the probationary period. Ms. Graves contends the court erred in ruling she was not the prevailing party because the jury awarded her zero damages. She also contends the court erred in denying her motion for judgment notwithstanding the verdict/summary judgment or for a new trial on the issue of damages.

WAC 356-30-260 provides, in part:

> **Probationary period — Provisions — Status of employee.** (1) Employees who receive appointments to permanent positions from the open competitive register and the reemployment register shall serve a probationary period of six to twelve months as determined by the personnel board. . . .
>
> . . . .
>
> (3) The probationary period will provide the appointing authority with the opportunity to observe a new employee's work, to train and aid the new employee in adjustment to the position, and to terminate any employee whose work performance fails to meet the required standards.

Termination of a probationary employee is prescribed by WAC 356-30-270, as follows:

> **Probationary period — Dismissal — Notice — Rights acquired.** (1) An employee may be dismissed during a probationary period after being given written notice indicating the reasons for the dismissal five working days prior to the effective date of dismissal. However, if the agency believes the good of the service requires the immediate dismissal of the probationary employee, written notice of only one full working day prior to the effective date of the dismissal will be required.
>
> (2) An employee dismissed during a probationary period *shall not have the right to appeal the dismissal.* When proper advance notice of the dismissal is not given, the employee may enter an appeal for payment of salary for up to five days which the employee would have worked had proper notice been given. If such a claim is sustained, the employee will be entitled to the appropriate payment of salary but will not be entitled to reinstatement.

(Italics ours.)

Over the objections of the State, the trial court included the following instructions based on WAC 356-30-260(3):

### INSTRUCTION NO. 7

In regards to the Plaintiff's claim that she was unjustly dismissed from her probationary employment, the Plaintiff has the burden of proving the following:

1) That during the time of her employment her work performance met the standards required by the Department of Wildlife for any person holding this particular type of job; or

2) That the Department's failure to train, aid and assist her in adjusting to the position was a proximate cause of her inability to meet the standards required by the Department; and

3) The amount of damages, if any, proximately caused by the claimed unjust termination.

If you find from your consideration of all the evidence that either element (1) or (2) has been proved and that element (3) has been proved, then your verdict on this claim should be for the Plaintiff and against the Defendant. On the other hand, if the Plaintiff does not prove the required elements, then your verdict should be in favor of the Defendant and against the Plaintiff.

Instruction 9 provided:

The Plaintiff was a probationary employee. An administrative rule of the State of Washington provides that during the period of probation the employer has a duty to observe the new employee's work, to train and aid the new employee in adjustment to the position, and to terminate any new employee whose work performance fails to meet the required standards.

An employee cannot be terminated from probationary employment for failure to meet the required standards if the employer's failure to adequately train, aid and assist the probationary employee in adjusting to the position was a proximate cause of the probationary employee's inability to meet the work standards of the employer.

 First, Ms. Graves was a probationary employee and therefore has no right to appeal her termination. WAC 356--30-270(2); *Ross v. Department of Social & Health Servs.*, 23 Wn. App. 265, 269, 594 P.2d 1386, *review denied*, 92 Wn.2d 1023 (1979). "[A] civil service employee has only those rights specifically conferred by statute or regulation"; therefore, a terminated probationary employee has no right to demand anything more than severance pay. *Ross*, at 271.

 Second, Ms. Graves has no basis for recovery. She argues the language of WAC 356-30-260(3) imposes a duty on the employer to train, aid and assist the probationary

employee, granting her, in effect, a right to "adequate supervision". We disagree, reverse the judgment and dismiss this claim.

WAC 356-30-260(3) merely sets out the purpose of a state employee's probationary period. It is not a procedural prerequisite for termination of a probationary employee. *See Lumpkin v. Department of Social & Health Servs.*, 20 Wn. App. 406, 413-14, 581 P.2d 1060 (1978) (language in WAC 356--30-310, which provides that a supervisor "shall" counsel trial service employees, does not mean counseling is a procedural prerequisite for reverting an employee). "The purpose of probationary employment is to provide a trial period of employment during which the employer may observe the performance of the probationary employee before conferring the rights of permanent status." *Ross*, at 273. "[T]he opportunity to observe . . ., to train and aid the employee . . ." found in WAC 356-30-260(3) does not confer new rights or protections for a class of people. Such an interpretation is inconsistent with the clear prohibition of appeal in WAC 356--30-270(2). Further, Ms. Graves' reading of the WAC would accord more rights to probationary employees than to permanent employees. They are required to appeal their terminations to the personnel board, exhausting administrative remedies before pursuing an appeal in superior court. WAC 356-34-010, -080; WAC 358-30-210.

### VACATION OF JUDGMENT

Finally, Ms. Graves contends the trial court erred in denying her motion to vacate the judgment entered against her on the sexual discrimination claim. She asserts newly discovered evidence in the form of witness Sandra Hilson, a temporary employee in Mr. Duff's and Ms. Lloyd's office until early February 1984, shows that both supervisors had decided to fire Ms. Graves early in her employment because of sexual bias.

The procedure, CR 60(b), provides for vacation of a judgment on the following grounds, among others:

On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:

. . . .

(3) Newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under rule 59(b);

(4) Fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party;

. . . .

(11) Any other reason justifying relief from the operation of the judgment.

The refusal of the trial court to vacate judgment will be reviewed for abuse of discretion. *In re Marriage of Flannagan*, 42 Wn. App. 214, 222, 709 P.2d 1247 (1985), *review denied*, 105 Wn.2d 1005 (1986).

Ms. Hilson discovered Ms. Graves was suing the wildlife department and contacted her after the defense had rested its case. Ms. Hilson would have testified that she overheard Mr. Duff tell Ms. Lloyd that if Ms. Graves could not ride a horse, spit or chew "snoose", she would not fit in. She also would have testified she heard them discussing who would be the one to fire Ms. Graves. These alleged statements occurred during the time Ms. Graves was hospitalized in January or early February 1984, after only a few weeks' opportunity to observe her work performance. Ms. Graves offered Ms. Hilson's testimony as rebuttal; the trial court excluded the evidence, finding that it was properly part of her case in chief. The court also was not satisfied Ms. Graves had satisfied the due diligence requirement of CR 60(b)(3). We agree.

This was the second trial on these issues; reasonable inquiry should have revealed the witness. There is no abuse of discretion. Moreover, even were we to assume that Ms. Hilson could not have been discovered before the second trial, her testimony would not support the grant of a new trial. A new trial on the ground of newly discovered evidence will not be granted unless the evidence (1) will probably change the result of the trial; (2) was discovered after trial; (3) could not have been discovered before trial

even with the exercise of due diligence; (4) is material; and (5) is not merely cumulative or impeaching. *State v. Swan*, 114 Wn.2d 613, 641-42, 790 P.2d 610 (1990), *cert. denied*, 498 U.S. 1046 (1991). Considering the negative job evaluations and the State's evidence supporting legitimate reasons for termination, it is improbable that Ms. Hilson's testimony would have affected the verdict. Finally, Ms. Hilson's testimony is not material to the issue of the motive for Ms. Graves' termination because it does not specifically indicate bias on the basis of gender.

We affirm all but the judgment for unjust termination, which we reverse and dismiss.

THOMPSON, C.J., and SCHULTHEIS, J., concur.