IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| JANETTE WORLEY, ARNP, a single woman, | ) ) ) | No. 30950-9-III |
| Appellant, | ) ) ) | |
| v. | ) ) | PUBLISHED OPINION |
| PROVIDENCE PHYSICIAN SERVICES CO., a Washington corporation, | ) ) ) ) | |
| Respondent. | ) | |

BROWN, J. — Janette Worley appeals the trial court's summary dismissal of her

employment termination suit against Providence Physician Service Company. She

contends material facts are in dispute regarding the essential elements of her violation

of public policy and breach of promise claims. We disagree, and affirm.

FACTS

Ms. Worley began working as an Advanced Registered Nurse Practitioner

(ARNP) in Providence's orthopedic clinic on June 30, 2008. She signed an

acknowledgment that she had received the ARNP job description. She acknowledged

Providence's Confidentiality and Acceptable Use Agreement as it related to patient

protected health information. Providence required her not to disclose confidential information unless authorized by Providence within the scope of her employment or in compliance with Providence policies. Confidential information included patient information whether oral or recorded. Ms. Worley was required to, "hold confidential information in strict confidence." Clerk's Papers (CP) at 84. Ms. Worley acknowledged that upon breach Providence "may institute disciplinary action including termination of employment." CP at 89.

Providence provided Ms. Worley a Code of Conduct "Doing the right thing Right" handbook at the commencement of employment. CP at 61. The Code of Conduct specifically forbids staff from taking, "patient data offsite except as necessary and in accordance with Providence and departmental policies." CP at 67. The Code of Conduct required her to keep information, including patient information, obtained at a Providence organization confidential. "Confidentiality" includes "[k]eeping information private that should not be shared with anyone else." CP at 72.

Providence's Code of Conduct encouraged employees to contact a compliance officer if they suspect a regulatory violation. Providence advised employees they would not be disciplined for reporting "a possible regulatory violation." CP at 71. Employees, however, were advised that they "will not be protected from the results of their misconduct if they are responsible for a violation or any other act that is harmful to Providence." CP at 71.

2

Heidi Brown is the orthopedic center's office manager. Ms. Worley's clinical supervisor was Dr. Andrew Howlett. Dr. Howlett had an "advanced complex orthopedic practice." CP at 250. Providence notified Ms. Worley about the complexity of Dr. Howlett's practice when she was hired. As an ARNP, Ms. Worley was permitted to order, collect, perform, and interpret diagnostic tests. X-rays are considered diagnostic tests. Dr. Howlett instructed Ms. Worley how to review, read and interpret X-rays specific to his practice. Ms. Worley expressed her concerns to Dr. Howlett that she thought many of the patients she was treating had conditions too complex from an orthopedic stand point for her to be seeing. Dr. Howlett would go over specific patients with Ms. Worley before she went into the examination room or before she made rounds at the hospital to assist.

On December 16, 2008, Ms. Worley met with Ms. Brown and Dr. Howlett to address performance concerns. She was verbally warned pursuant to Providence's policies and procedures that complaints were received regarding her patient care and performance. Dr. Howlett expressed his commitment to teach, coach, and train Ms. Worley, but he advised Ms. Worley the issues addressed in the meeting needed to be completed or changed as soon as possible with no exceptions.

On January 29, 2009, Ms. Worley received a step two written warning pursuant to Providence's policies and procedures for failing to see patients she was scheduled to see and falling behind appointment times, not returning patient calls in a timely manner, and not appropriately checking out with nurses at the end of the clinic day. On February

11, 2009, another meeting was held regarding Ms. Worley's performance. In attendance were Senior Human Resource Business Partner, Jennifer Rollins, Director of Clinical Operations, Stacy Herron, Ms. Worley, and Ms. Brown. The issues discussed at the meeting related to documentation, communication with patients, training, RN/staff relationships, schedule timeliness, and prioritization. On May 26, 2009, Dr. Howlett completed a Clinical Competency Evaluation Form on Ms. Worley, identifying seven areas where her performance did not meet expectations.

On June 9, 2009, Providence issued a final warning to Ms. Worley for excessive tardiness or, inferior work performance, work flow impact issues, inappropriate behavior and conduct, unsatisfactory patient and public relations, and noncooperation with leadership or fellow employees. The next day, Ms. Worley met with Kris Fay, Providence's Chief Operating Officer, and Ms. Rollins. Ms. Worley reported compliance issues about alleged improper Medicare billing and having to read and interpret complex orthopedic X-rays. Ms. Worley claims she was told to point to a diagnostic screen and, "just say anything" because Providence was "not going to get paid for it anyway." CP at 274. After this meeting, Ms. Fay contacted Providence Compliance Specialist, Kari Lidbeck, to report Ms. Worley's allegations.

That same day, Ms. Brown contacted Ms. Fay to advise her that Ms. Worley had returned to the orthopedic clinic and removed several patient face sheets which were on Ms. Worley's desk. The patient face sheets contained protected patient health

4

information, including the patient's name, date of birth, patient's condition, patient's diagnosis and treatment provided.

On June 11, 2009, Ms. Worley met with both Ms. Fay and Ms. Rollins, explaining she took the medial records because Ms. Lidbeck asked her to fax any documents related to her concerns. Ms. Worley claimed she redacted patient information prior to taking the documents. Ms. Worley, however, never provided the compliance specialist with any documents. She admitted to showing the documents to her then boyfriend, an attorney.

On June 12, 2009, Providence terminated Ms. Worley for taking protected patient health information off the premises of the orthopedic clinic in violation of Providence's policies and for insubordination in refusing to return the documents when initially requested. Ms. Worley never contacted the department of health or any other state or governmental agency relating to her allegations of improper billing practices or alleged issues relating to being required to perform duties that she believed were outside the scope of her practice and medical charting issues either before or after her termination.

Ms. Worley sued Providence for wrongful termination in violation of public policy and breach of promise arising out of Providence's Code of Conduct. Providence successfully requested summary judgment dismissal of both claims. The trial court decided Ms. Worley failed to establish the jeopardy, causation, and justification elements on the wrongful discharge claim and the reliance element on the breach of

promise claim. But, on reconsideration the court clarified regarding the breach of promise claim that Ms. Worley failed to provide sufficient evidence of breach.

## ANALYSIS

The issue is whether the trial court erred in summarily dismissing Ms. Worley's wrongful discharge complaint. She contends genuine issues of material fact remain in dispute regarding her public policy and breach of promise claims.

Our review is de novo. *Korslund v. Dyncorp Tri-Cities Servs., Inc.*, 156 Wn.2d 168, 177, 125 P.3d 119 (2005). "Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Id.* Considering the facts in the light most favorable to the nonmoving party, we will affirm summary judgment if reasonable minds could reach but one conclusion from the presented evidence. *Id.*

In Washington, employment of indefinite duration generally may be terminated by either the employer or the employee at any time, with or without cause. *Bulman v. Safeway, Inc.*, 144 Wn.2d 335, 340, 27 P.3d 1172 (2001). Exception to this termination-at-will employment relationship is if the termination violates public policy and if the employee relied on a specific promise of employment. *See Korslund*, 156 Wn.2d at 177 (public policy); *Thompson v. St. Regis Paper Co.*, 102 Wn.2d 219, 225, 685 P.2d 1081 (1984) (breach of promise).

The wrongful discharge in violation of public policy is a narrow exception and courts must "'proceed cautiously.'" *Thompson*, 102 Wn.2d at 232 (quoting *Parnar v.*

6

*Americana Hotels, Inc.*, 65 Haw. 370, 380, 652 P.2d 625 (1982)). Wrongful discharge in violation of public policy is an intentional tort. *Korslund*, 156 Wn.2d at 178. The tort has four elements:

> (1) The plaintiffs must prove the existence of a clear public policy (the clarity element). . . .
> (2) The plaintiffs must prove that discouraging the conduct in which they engaged would jeopardize the public policy (the jeopardy element). . . .
> (3) The plaintiffs must prove that the public-policy-linked conduct caused the dismissal (the causation element)
> . . . .
> (4) The defendant must not be able to offer an overriding justification for the dismissal (the absence of justification element).

*Gardner v. Loomis Armored, Inc.*, 128 Wn.2d 931, 941, 913 P.2d 377 (1996) (emphasis omitted). The elements are listed in the conjunctive, requiring the plaintiff to show each element in order to prevail. *Ellis v. City of Seattle*, 142 Wn.2d 450, 459, 13 P.3d 1065 (2000). The parties stipulate to the first element.

The jeopardy element has a high bar to meet. We "proceed cautiously" when reviewing the jeopardy element. *Cudney v. ALSCO, Inc.*, 172 Wn.2d 524, 529-30, 259 P.3d 244 (2011). A plaintiff must show he or she engaged in particular conduct directly relating to the public policy or necessary for effective public policy enforcement. *Weiss v. Lonnquist*, 173 Wn. App. 344, 352, 293 P.3d 1264 (2013). The plaintiff must prove discouraging the particular conduct would jeopardize the public policy. Thus, the plaintiff must show other means of promoting the public policy are inadequate. *Korslund*, 156 Wn.2d at 181-82. If other adequate means are available, the public

7

policy is not in jeopardy and a private cause of action need not be recognized. *Id.* at 184. "The jeopardy element guarantees an employer's personnel management decisions will not be challenged unless a public policy is genuinely threatened." *Gardner*, 128 Wn.2d at 941-42. "The question of whether adequate alternative means for promoting a public policy exist presents a question of law as long as 'the inquiry is limited to examining existing laws to determine whether they provide adequate alternative means of promoting the public policy.'" *Cudney*, 172 Wn.2d at 528-29 (quoting *Korslund*, 156 Wn.2d at 182).

Ms. Worley claims the public policies at issue are insuring workplace safety, standard of care in the healthcare field, preventing fraud in billing, and protecting against retaliation for such violations. The trial court reviewed whether Ms. Worley proffered sufficient evidence to support the jeopardy element; that is, if current laws or regulations provided an adequate means of promoting the public policies proffered. We review summary judgment decisions like the trial court. In order to establish the jeopardy element, Ms. Worley has to establish that other means of promoting the public policy were inadequate and the actions she took in bringing a tort of last resort, a wrongful discharge claim in violation of public policy, was the "only available means" to promote the public policy and the narrow exception to the doctrine of at-will employment. *Hubbard v. Spokane County*, 146 Wn.2d 699, 713, 50 P.3d 602 (2002).

The Washington Health Care Act (WHCA), chapter 43.70 RCW provides comprehensive remedies to Ms. Worley to promote the public policy claim. RCW

43.70.075 provides employees and healthcare professionals an administrative process and legal process for adjudicating whistleblower complaints; thus, the statute provides remedies that adequately promote and vindicate the public policies set forth within the statute and its provisions. Ms. Worley failed to avail herself of the RCW 43.70.075 protections. She could have filed a charge or complaint under RCW 43.70.075 with the department of health, but failed to do so. Ms. Worley contends the WHCA is inadequate because it does not provide an administrative process. Considering the statute and its subparts, we disagree.

RCW 43.70.075(1) allows a whistleblower to file a complaint with the department of health and provides for confidentiality when the complaint or report is made in "good faith." The term "whistleblower" is defined as an "employee, or healthcare professional who in good faith reports alleged quality of care concerns to the department of health." RCW 43.70.075(2)(c). The statute requires the department to "adopt rules to implement procedures for filing, investigation, and resolution of whistleblower complaints that are integrated with complaint procedures under Title 18 RCW for health professionals or health care facilities." RCW 43.70.075(4). Significantly, the test is whether the statute provides comprehensive remedies that are adequate to protect the specific public policies identified by Ms. Worley. *Korslund*, 156 Wn.2d at 182. It does.

In *Cudney*, our Supreme Court recently declined to expand the wrongful discharge against public policy tort when the Washington Industrial Safety and Health Act of 1973 (WISHA) provided an adequate remedy. Under WISHA, an employee

9

reports alleged retaliatory acts to the director of the department of labor and industries. RCW 49.17.160(2). The *Cudney* court partly concluded WISHA provided an adequate means of promoting the public policies of ensuring workplace safety and protecting workers who report safety violations by providing comprehensive remedies that serve to protect the specific public policy identified by the plaintiffs. RCW 49.17.160(2); *Cudney*, 172 Wn.2d at 535-36.

Similar to WISHA, the WHCA provides employees and healthcare professionals an administrative process and legal process for adjudicating whistleblower complaints. Ms. Worley contends that internal reporting should be adequate; but that does not satisfy a violation of public policy claim in this context. Therefore, we agree reasonable minds could solely conclude Ms. Worley cannot establish the jeopardy element of her wrongful discharge in violation of public policy claim. Accordingly, her claim fails. *Ellis*, 142 Wn.2d at 459. The trial court did not err in its jeopardy ruling.

Wrongful discharge based on breach of promise was first recognized in *Thompson*. The *Thompson* court held that an employer will be bound by promises of specific treatment in specific situations, if the employee is induced by those promises to remain on the job and to not seek other employment. *Thompson*, 102 Wn.2d at 230. The employee must prove (1) a statement in an employee manual or similar document amounts to a promise of specific treatment in specific situations, (2) the employee justifiably relied on that promise, and (3) the employer breached that promise. *Korslund*, 156 Wn.2d at 184-85. Although these elements involve fact issues, the

issues may be decided as matters of law if reasonable minds could not differ in resolving them. *Id.* at 185. The trial court clarified on reconsideration that Ms. Worley failed to establish the breach element of her breach of promise claim.

Employee manuals can lead to obligations governing the employment relationship. *Thompson*, 102 Wn.2d at 229. Providence's Code of Conduct encouraged employees to contact a compliance officer if they suspected a regulatory violation. Providence advised employees they would not be disciplined for reporting "a possible regulatory violation." CP at 71. But employees were equally advised they "will not be protected from the results of their misconduct if they are responsible for a violation or any other act that is harmful to Providence." CP at 71. Viewing the facts in the light most favorable to Ms. Worley, no evidence shows she was discharged for contacting a compliance officer about good faith questions or concerns; rather, she violated confidentiality policies.

Ms. Worley overlooks she was bound by the provision in Providence's Code of Conduct forbidding staff from taking, "patient data offsite except as necessary and in accordance with Providence and departmental policies." CP at 67. The Code of Conduct required her to keep information obtained at a Providence organization confidential which included patient information. "Confidentiality" includes "keeping information private that should not be shared with anyone else." CP at 72. And, Ms. Worley was bound by Providence's Confidentiality and Acceptable Use Agreement to not disclose confidential information unless authorized by Providence. That violation

11

would result in "disciplinary action including termination of employment." CP at 89.

Whether the information Ms. Worley took was redacted on not, it still would be considered confidential and not to be taken from the work place and not to be shown to her boyfriend. The Code of Conduct specifically provides that employees are not "protected from the results of their misconduct if they are responsible for the violation or any other act that is harmful to Providence." CP at 71.

Given all, reasonable minds could solely conclude Ms. Worley failed to establish the breach element of a wrongful discharge based on breach of promise claim. The trial court did not err in summarily dismissing this claim as well as the public policy claim.

Affirmed.

Brown, J.

WE CONCUR:

Korsmo, C.J.

Kulik, J.

12