FILED
COURT OF APPEALS
DIVISION II

2013 DEC 17 AM 8:50

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| PAULA JONES, | No. 43975-1-II |
| Appellant, | |
| v. | |
| GRAYS HARBOR COUNTY, a municipal corporation, organized and existing under the laws of the State of Washington; ALBERT CARTER; BOB BEERBOWER; MIKE WILSON; ROD EASTON; MARILYN LEWIS; MARSHA WHITAKER; CLAUDIA SELF; and TERESA OLSON, | UNPUBLISHED OPINION |
| Respondents. | |

JOHANSON, A.C.J. — Paula Jones appeals the superior court's summary dismissal of her action against Grays Harbor County for wrongful termination in violation of public policy. She asserts that her case met all the requirements for the tort under Washington law. She also argues that the superior court erred by denying her motion to strike the County's untimely rebuttal documents and denying her motion to continue the summary judgment hearing.[1] We hold that (1) Jones failed to provide a sufficient record to review whether the trial court erred by denying her motion to strike, (2) Jones abandoned her request for a continuance, and (3) the record is

---

[1] Jones expressly abandons her other arguments in her reply brief and we consider them no further.

insufficient as a matter of law to show a nexus between Jones's report regarding Dave Percell's conduct and her termination. We affirm.

FACTS

Jones was employed for several years with the Grays Harbor County Fair Board, including serving as acting director. She alleged that on August 17, 2007, Persell, a board of directors member for the fair, came into the fair office very angry after a miscommunication between them regarding delivery of a piece of equipment. According to Jones, Persell approached her, yelled at her at such a close distance that he spat on her face, shoved a piece of paper in her face, repeatedly demanded that she explain why she had called him a liar, and stood over her while yelling at her with bulging eyes and a red face. Jones feared that Persell would hit her because his tone was very threatening and aggressive; and when he finally left, all the women in the office began to cry. A police report was filed and Jones told her supervisor that she no longer felt safe being around or working with Persell. Persell resigned from the fair board on October 11, 2007. Sixteen months after Jones's confrontation with Persell, the County terminated Jones from her employment effective December 31, 2008.

In January 2011, Jones filed a complaint against the County, several County commissioners, and several of her former supervisors and co-workers in their individual capacities. Jones pleaded claims for defamation, retaliation, race discrimination/disparate treatment, gender discrimination/hostile work environment, and wrongful termination in violation of public policy; but only the latter wrongful termination is at issue here.

In July 2012, the County moved for summary judgment, seeking dismissal of all of Jones's claims. Jones responded that the County had wrongfully terminated her after she stood

up to Persell. She explained that Persell assaulted her on the job, the County wrongfully terminated her for reporting Persell's assault, her termination created a chilling effect among other County employees, and the County violated clear public policy in firing her because employees should feel safe and comfortable reporting assaults at work.

The day before the summary judgment hearing, the County filed rebuttal documents in reply to Jones's response. The County argued that Jones had failed to timely file her responsive documents and that her responsive documents still failed to create any genuine issue of material fact. A clerk's notation from the summary judgment hearing shows that Jones asked the court to strike the County's untimely rebuttal documents, asked for a continuance, but then agreed to proceed with the summary judgment hearing. The superior court eventually granted summary judgment and dismissed all of Jones's claims. Jones appeals the superior court's order granting summary dismissal of her wrongful discharge claim.[2]

## ANALYSIS

### I. MOTIONS TO STRIKE AND TO CONTINUE

First, Jones argues that the superior court erred by denying her motion to strike the County's untimely rebuttal documents in support of summary judgment. She argues that the superior court, in the alternative, should have granted her motion to continue the summary judgment hearing to give her time to prepare. Her arguments fail.

The appellant has the burden of providing a sufficient record to review issues raised on appeal. *Story v. Shelter Bay Co.*, 52 Wn. App. 334, 345, 760 P.2d 368 (1988). Jones relies

---

[2] In her reply brief, Jones abandons her other claims and asks us to focus solely on her wrongful discharge in violation of public policy claim.

solely on clerk's notations that reflect merely that Jones asked the court to strike the County's rebuttal filings, asked for a continuance, and then agreed to proceed. Our record does not contain written motions from Jones or the transcript from the summary judgment hearing to explain what Jones's motions were based upon or supported by. Therefore, here the record is incomplete and gives us nothing to review. Because Jones has the burden of providing a sufficient record for us to review issues she raises on appeal and because she has not done so, her arguments fail. Finally, because the summary judgment hearing record shows that Jones abandoned her request for a continuance, there is no trial court continuance decision for us to review.

## II. SUMMARY JUDGMENT

Next, Jones argues that the superior court erroneously dismissed her claim for wrongful termination in violation of public policy because her claim satisfied all the elements under the test laid out in *Korslund v. DynCorp Tri-Cities Servs., Inc.*, 156 Wn.2d 168, 178, 125 P.3d 119 (2005). We disagree.

### A. Standard of Review and Rules of Law

When reviewing an order for summary judgment, we engage in the same inquiry as the trial court. *Mountain Park Homeowners Ass'n v. Tydings*, 125 Wn.2d 337, 341, 883 P.2d 1383 (1994). We will affirm summary judgment if no genuine issue of any material fact exists and the moving party is entitled to judgment as a matter of law. CR 56(c). All facts and reasonable inferences are considered in the light most favorable to the nonmoving party, and all questions of law are reviewed de novo. *Berrocal v. Fernandez*, 155 Wn.2d 585, 590, 121 P.3d 82 (2005).

In Washington, an employer generally may terminate employment of indefinite duration with or without cause. *Bulman v. Safeway, Inc.*, 144 Wn.2d 335, 340, 27 P.3d 1172 (2001). Wrongful discharge in violation of public policy is an intentional tort and a narrow exception to the termination-at-will employment relationship; courts must proceed with caution. *Worley v. Providence Physician Servs. Co.*, 175 Wn. App. 566, 573, 307 P.3d 759 (2013). Our Supreme Court has recognized a public policy tort claim in four areas: "'(1) where the discharge was a result of refusing to commit an illegal act, (2) where the discharge resulted due to the employee performing a public duty or obligation, (3) where the [discharge] resulted because the employee exercised a legal right or privilege, and (4) where the discharge was premised on employee "whistleblowing" activity.'" *Piel v. City of Federal Way*, 177 Wn.2d 604, 609-10, 306 P.3d 879 (2013) (quoting *Dicomes v. State*, 113 Wn.2d 612, 618, 782 P.2d 1002 (1989) (citations omitted)).

This tort has four elements and the plaintiff must show that each element is satisfied in order to prevail:

> "(1) The plaintiffs must prove the existence of a clear public policy (the clarity element).
> (2) The plaintiffs must prove that discouraging the conduct in which they engaged would jeopardize the public policy (the jeopardy element).
> (3) The plaintiffs must prove that the public-policy-linked conduct caused the dismissal (the causation element).
> (4) The defendant must not be able to offer an overriding justification for the dismissal (the absence of justification element)."

*Worley*, 175 Wn. App. at 573 (quoting *Gardner v. Loomis Armored, Inc.*, 128 Wn.2d 931, 941, 913 P.2d 377 (1996) (emphasis omitted) (citations omitted)). Assuming, without deciding, the

existence of the other elements, we exercise our discretion to examine only the third element regarding causation.

### B. Causation Element

Under the causation element, a plaintiff must show that public-policy-linked conduct actually caused termination of employment. *Gardner*, 128 Wn.2d at 941. Because wrongful discharge in violation of public policy is an intentional tort, the plaintiff must establish wrongful intent to discharge. *Korslund*, 156 Wn.2d at 178. There must be sufficient evidence of a nexus between the discharge and the alleged policy violation. *Havens v. C&D Plastics, Inc.*, 124 Wn.2d 158, 179, 876 P.2d 435 (1994). Although issues of causation are usually questions of fact not generally susceptible to summary judgment, we may determine causation as a matter of law when reasonable minds can reach but one conclusion. *Miller v. Likins*, 109 Wn. App. 140, 144, 34 P.3d 835 (2001).

Jones's only assertion that arguably supports the causation element is that one County commissioner testified during depositions that the only example he could remember of something Jones had done wrong was the "Persell incident." Br. of Appellant at 10. But Jones fails to explain how this testimony establishes the required nexus. Further, she fails to address the timeline of events: the "Persell incident" occurred in the summer of 2007; and the County terminated Jones in December 2008, some 16 months after the incident with Persell. Jones does

not cite any Washington case where an event occurring over a year prior to termination has satisfied the causation element for wrongful discharge in violation of public policy.[3]

In addition, Jones presents no other evidence of causation nor does she make substantial argument that her complaints to the County and to the police regarding Persell's conduct were the cause of her termination.[4] Further, Jones cannot show wrongful intent to discharge because she does not explain why the County's proffered reasons for her termination did not actually cause her termination. The County explained that it terminated Jones because of her poor management skills, poor communication, and a lack of professionalism and ability to do the job. Jones does explain why these reasons could not have been the cause of her termination. Instead she relies on bare allegations that the County's only reason for terminating her was that she stood up to Persell after he assaulted her on the job. But bare allegations regarding the causation nexus are insufficient to avoid summary judgment. Even when reviewed in the light most favorable to Jones, the evidence is insufficient here to meet her burden. Reasonable minds can reach but one conclusion here–that Jones has not shown on the record before us, sufficient evidence of a nexus between her employment termination and any alleged public policy violation. Therefore she has not met the causation element for the tort of wrongful termination in violation of public policy,

---

[3] Instead, in her reply, she cites federal case law from the Sixth Circuit arguing that courts have never suggested that 15 months is too long to establish causation. But we are not bound by Sixth Circuit cases and we are not persuaded.

[4] Jones makes additional assertions in her reply under the heading, "The Causation Element Exists." Reply Br. of Appellant at 8. But the purpose of a reply brief is to respond to the respondent's arguments and not to raise new arguments that were not adequately addressed in the appellant's opening brief. RAP 10.3(c).

No. 43975-1-II

her claim fails, and we do not address the remaining elements. *Worley*, 175 Wn. App. at 573. We hold that the superior court did not err in dismissing this claim.

We affirm.

### ATTORNEY FEES

Jones's request for attorney fees does not comply with RAP 18.1. And because she is not the prevailing party she is not entitled to attorney fees. RAP 18.1.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Johanson, J.

We concur:

Hunt, J.

Worswick, C.J.

8