IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| JOETTA RUPERT, an individual, | ) | No. 31950-4-III |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| KENNEWICK IRRIGATION DISTRICT, a | ) | |
| public entity, | ) | |
| | ) | |
| Respondent. | ) | |

BROWN, J. — Joetta Rupert appeals the summary judgment dismissal of her claims against Kennewick Irrigation District (KID) for retaliatory discharge in violation of the Washington Law Against Discrimination (WLAD), chapter 49.60 RCW, and wrongful termination in violation of public policy. She contends the trial court erred because it failed to find remaining genuine issues of material fact regarding retaliation, and failed to rule as a matter of law she had established the jeopardy and causation elements necessary for her wrongful termination claim. We disagree with Ms. Rupert, and affirm.

FACTS

KID hired Ms. Rupert in June 2003 as an administrative assistant in its real estate department and a few years later promoted her to department manager. She was an at-will employee reporting directly to the KID Board.

KID utilized an endowment fund for the proceeds from the sale of KID real property. KID had adopted a policy for the use of the endowment fund, which the board repealed in 2006. Then, the fund was called a reserve fund worth about $15 million. Ms. Rupert became uncomfortable with how the reserve fund was used. She believed the board was not meeting its fiduciary duties and became concerned about inconsistent investment report information prepared by KID's treasurer. Ms. Rupert brought her concerns to the board. She reported to Board President John Jaksch that certain investments were being cashed out instead of being reinvested and transferred to the operations account without board approval. During the relevant annual inspections, no discrepancies were found by the state auditor. Nevertheless, based on Ms. Rupert's concerns, the board hired an outside auditor to perform an independent audit for 2006-2009. Ms. Rupert conferred with the outside auditor. The audit results, confirming some of Ms. Rupert's concerns, were shared with the Board in May 2010. The outside auditor, however, did not find any missing funds.

In November 2009, KID hired a new district manager, Charles Freeman. Communication immediately broke down between Mr. Freeman and Ms. Rupert. She felt this breakdown was because she was a woman.

In March 2010, the board reassigned Ms. Rupert's supervisory responsibilities on the Red Mountain properties to Scott Revell, planning department manager. Ms. Rupert felt this was in response to her raising concerns about the legality of leasing properties on Red Mountain for longer than a one year period.

On March 6, 2010, Ms. Rupert presented the board her easement recommendations for certain KID-owned property. Board member, Patrick McGuire, disagreed and, according to Ms. Rupert, became angry and hostile towards her and successfully suggested to other board members that they vote against her proposal. The same day, board members and managers attended a retreat where Ms. Rupert claims both President Jaksch and board member, Gene Huffman, made comments about not wanting to sit next to her.

On June 17, 2010, Ms. Rupert informed Mr. Huffman she needed to speak to Mr. Freeman about work problems she was having with Mr. Revell. Mr. Huffman allegedly told Ms. Rupert not to contact Mr. Freeman because he had been "burned before" and "was not comfortable being alone with [a] woman." Clerk's Papers (CP) at 238.

In July 2010, Ms. Rupert notified the board that she would be attending a personal injury trial for a prior automobile accident she was involved in and would be out of the office. Ms. Rupert used sick leave for the week she was off. On July 15, 2010, Ms. Rupert met with Mr. Huffman for over two and a half hours to complain about what she perceived as the unprofessional practice of not having direct contact with Mr. Freeman. Ms. Rupert alleges when she offered her hand to say goodbye, Mr. Huffman immediately grabbed it and brought her close to him, hugging her tightly and rubbed his

chest against hers without her consent. At this same meeting, Mr. Huffman broached the topic of how Ms. Rupert was going to claim her time off from work for the personal injury trial. Ms. Rupert told Huffman she was going to use her accrued sick leave benefits and inquired as to whether this was an issue, offering to use personal or vacation time instead. According to Ms. Rupert, Mr. Huffman told her using sick leave was "acceptable and fine." CP at 194. Manager Freeman, however, notified her by e-mail that her request to use her sick leave was denied. According to Ms. Rupert she responded, "'No problem, go ahead and change it.'" CP at 285.

On July 20, 2010, the board notified Ms. Rupert it was placing her on paid administrative leave "pending an investigation of the charge that you attempted to use sick leave for time off to attend a personal injury trial." CP at 313.

On July 27, 2010, KID terminated Ms. Rupert's employment. President Jaksch later declared during 2009 and 2010, he "became increasingly concerned of [Ms. Rupert's] performance and of the costs associated with the Real Estate Assets Department that she managed." CP at 124. The board decided these concerns in addition to the recent inappropriate use of sick leave warranted termination.

Ms. Rupert sued KID for discrimination, hostile work environment, retaliation in violation of WLAD, wrongful termination in violation of public policy under the Local Government Whistleblower Protection Act (LGWPA), chapter 42.41 RCW, and failure to pay wages. Ms. Rupert was aware of KID's whistleblower policy, but she did not avail herself to it. The parties settled the wage claim before the trial court summarily

4

No. 31950-4-III
*Rupert v. Kennewick Irrigation Dist.*

dismissed her remaining claims. Ms. Rupert appeals solely the dismissal of her WLAD

retaliation and wrongful discharge in violation of public policy claims.

## ANALYSIS

The issue is whether the trial court erred in summarily dismissing Ms. Rupert's

claims for WLAD retaliation and wrongful termination in violation of public policy. She

contends she met her prima facie burden on both causes of action.

We review summary judgment orders de novo, performing the same inquiry as

the superior court. *Hisle v. Todd Pac. Shipyards Corp.*, 151 Wn.2d 853, 860, 93 P.3d

108 (2004). The superior court properly grants summary judgment when no genuine

issue of material fact remains and the moving party is entitled to judgment as a matter

of law. *Morin v. Harrell*, 161 Wn.2d 226, 230, 164 P.3d 495 (2007) (citing CR 56(c)).

In a summary judgment motion, the moving party's burden is to demonstrate

summary judgment is proper. *Atherton Condo. Apartment-Owners Assoc. Bd. of Dirs.*

*v. Blume Dev. Co.*, 115 Wn.2d 506, 516, 799 P.2d 250 (1990). We consider all the

facts submitted and the reasonable inferences from them in the light most favorable to

the nonmoving party. *Id.* We resolve any doubts about the existence of a genuine

issue of material fact against the party moving for summary judgment. *Id.* "Summary

judgment is appropriate only if, from all the evidence, reasonable persons could reach

but one conclusion." *Lilly v. Lynch*, 88 Wn. App. 306, 312, 945 P.2d 727 (1997).

First, regarding retaliation in Washington, an employer generally may terminate

at-will employees with or without cause. *Bulman v. Safeway, Inc.*, 144 Wn.2d 335, 340,

27 P.3d 1172 (2001). The WLAD, however, prohibits retaliation against a party

asserting a claim based on a perceived violation of his civil rights or participating in an investigation into alleged workplace discrimination. RCW 49.60.210(1).

To establish a prima facie retaliation case, a plaintiff must show (1) he or she engaged in statutorily protected activity, (2) his or her employer took adverse employment action against him or her, and (3) a causal link between the activity and the adverse action. *Short v. Battle Ground Sch. Dist.*, 169 Wn. App. 188, 205, 279 P.3d 902 (2012). All three must be established to survive summary judgment. *Id.* Because Ms. Rupert's employment was terminated, we focus on whether Ms. Rupert engaged in statutorily protected activity and if so, whether that activity was causally linked to her termination.

An employee engages in WLAD-protected activity when he or she opposes employment practices forbidden by antidiscrimination law or other practices he or she reasonably believed to be discriminatory. *Short*, 169 Wn. App. at 205. It is not necessary the complained about activity be actually unlawful because "'[a]n employee who opposes employment practices reasonably believed to be discriminatory is protected by the 'opposition clause' whether or not the practice is actually discriminatory.'" *Graves v. Dep't of Game*, 76 Wn. App. 705, 712, 887 P.2d 424 (1994) (internal quotation marks omitted) (quoting *Gifford v. Atchison, Topeka & Sante Fe Ry.*, 685 F.2d 1149, 1157 (9th Cir.1982)). Absent some reference to the plaintiff's protected status, a general complaint about an employer's unfair conduct does not rise to the level of protected activity under WLAD. *Alonso v. Qwest Commc'ns Co.*, 178 Wn. App. 734, 753-54, 315 P.3d 610 (2013) (citing Graves, 76 Wn. App. at 712)). "'To determine

6

whether an employee was engaged in protected opposition activity, the court must balance the setting in which the activity arose and the interests and motives of the employer and employee.'" *Estevez v. Faculty Club of Univ. of Wash.*, 129 Wn. App. 774, 798, 120 P.3d 579 (2005) (quoting *Kahn v. Salerno*, 90 Wn. App. 110, 130, 951 P.2d 321 (1998)).

Ms. Rupert's complaints were not specific or formally made. Moreover, she initially did not claim the actions were discriminatory. Instead, she complained solely about workplace issues, not harassment or discrimination. She expressed professional concern to Mr. Huffman about being unable to meet with Mr. Freeman because it interfered with her work, even though Mr. Huffman told her Mr. Freeman "had been burned before" by female employees and was not comfortable being alone with them. CP at 238. Ms. Rupert deposed she did not recall the entirety of the conversation but recalled her displeasure that business was being hampered because of two managers not being able to communicate. Ms. Rupert admitted she did not report this conversation to anyone in management. Ms. Rupert claims Mr. Huffman tried to give her a hug as she left a meeting and she thought that was sexual harassment. But, again, this was unreported.

Ms. Rupert fails to show she engaged in statutorily protected activity or persuade us genuine material fact issues remain. She did not complain to any supervisor or to the human resource department of activity that was forbidden by WLAD. Her complaints were centered on financial issues related to the reserve fund and unprofessional treatment, not gender based discrimination issues. Ms. Rupert did not

7

make complaints under *Alonso* or *Estevez* fairly considered as opposition to employment practices forbidden by anti-discrimination law or other practices she reasonably believed to be discriminatory. *Short*, 169 Wn. App. at 205.

Considering her failure to establish the first factor in a retaliation claim, Ms. Rupert's claim necessarily fails. Nevertheless we note Ms. Rupert fails to show prima facie causation. Ms. Rupert must demonstrate retaliation for her oppositional conduct was a "substantial factor" motivating KID's adverse employment action. *Burchfiel v. Boeing Corp.*, 149 Wn. App. 468, 482, 205 P.3d 145 (2009). Close proximity in time between the adverse employment action and the protected activity, along with evidence of satisfactory work performance, can suggest an improper motive. *Campbell v. State*, 129 Wn. App. 10, 23, 118 P.3d 888 (2005). The record shows KID had become dissatisfied for some time with Ms. Rupert's performance, her department was over budget, and she took sick leave contrary to KID's sick leave policy. Ms. Rupert does not show retaliation was a substantial factor motivating KID's adverse employment action.

In sum, we conclude the court properly granted summary judgment in favor of KID on her WLAD retaliation claim.

Second, wrongful discharge in violation of public policy is an intentional tort, a narrow exception to the termination-at-will employment relationship. *Worley v. Providence Physician Servs. Co.*, 175 Wn. App. 566, 573, 307 P.3d 759 (2013). This narrow claim is recognized in four areas: "'(1) where the discharge was a result of refusing to commit an illegal act, (2) where the discharge resulted due to the employee

performing a public duty or obligation, (3) where the [discharge] resulted because the employee exercised a legal right or privilege, and (4) where the discharge was premised on employee "whistleblowing" activity.'" *Piel v. City of Federal Way*, 177 Wn.2d 604, 609-10, 306 P.3d 879 (2013) (quoting *Dicomes v. State*, 113 Wn.2d 612, 618, 782 P.2d 1002 (1989) (citations omitted)). Ms. Rupert relies on the fourth area, whistleblowing.

To establish a claim for wrongful discharge in violation of public policy, the plaintiff must prove an existing clear public policy (clarity element), discouraging the conduct in which the employee engaged would jeopardize the public policy (jeopardy element), and the policy-linked conduct caused the dismissal (causation element). *Korslund v. DynCorp Tri-Cities Services, Inc.*, 156 Wn.2d 168, 178, 125 P.3d 119 (2005). At issue here is the jeopardy and causation elements.

In order to establish the jeopardy element, the plaintiff must show other means of promoting the public policy are inadequate. *Cudney v. ALSCO, Inc.*, 172 Wn.2d 524, 530, 259 P.3d 244 (2011). Protecting the public is the policy that must be promoted, not protecting the employee's individual interests. *Id.* at 538. In other words, the test of whether a tort claim for wrongful termination in violation of public policy is viable is if other means are inadequate to promote the public policy.

Here, the LGWPA provides an administrative process for adjudicating whistleblower complaints. Local governments are required to establish policies and procedures for reporting improper governmental action and for protecting employees who provide information in good faith from retaliation. RCW 42.41.030-.040. The law provides for a hearing before an independent administrative law judge, who may grant

9

relief including reinstatement, back pay, injunctive relief, and attorney fees and costs. RCW 42.41.040(5)-(7). The administrative law judge may also impose a civil penalty of up to $3,000 personally upon the retaliator and recommend that the person found to have retaliated be suspended with or without pay or dismissed. RCW 42.41.040(8). Our Supreme Court has provided guidance in determining whether these whistleblower protections are adequate to safeguard the public policy of protecting whistleblowers.

The plaintiffs in *Korslund* claimed they were wrongfully terminated for reporting safety violations, mismanagement, and fraud at the Hanford Nuclear Reservation. The court held that because the federal Energy Reorganization Act (ERA) provided an administrative process for adjudicating whistleblower claims and provided for reinstatement, back pay, and other compensatory damages, an adequate remedy existed protecting the public interest. *Korslund*, 156 Wn.2d at 182-83.

In *Cudney*, the plaintiff claimed he was discharged after reporting his supervisor was drinking on the job and had driven a company vehicle while intoxicated. The court held the Washington Industrial Safety and Health Act (WISHA) provided a sufficient administrative remedy, and state laws, on driving while intoxicated, adequately protected the public. *Cudney*, 172 Wn.2d at 527.

But, in *Piel*, the court held the administrative remedies available through the Public Employment Relations Commission (PERC) under chapter 41.56 RCW, were inadequate, on their own, to fully vindicate public policy when a public employer discharges a public employee for asserting collective bargaining rights.

10

Unlike *Korslund* and *Cudney*, *Piel* involved a prior case holding PERC remedies failed to fully address the broader public interests involved because it protected personal contractual rights solely. *Piel*, 177 Wn.2d at 616-17 (quoting *Smith v. Bates Technical Coll.*, 139 Wn.2d 793, 809, 991 P.2d 1135 (2000)). And unlike *Korslund* and *Cudney*, *Piel* involved a statute declaring PERC remedies supplement others and must be liberally construed to accomplish their purpose. *Piel*, 177 Wn.2d at 617 (quoting RCW 41.56.905). In those circumstances, the *Piel* court recognized a private common law tort remedy as necessary to fully vindicate public policy. *Id.* The *Piel* decision analyzed a single issue, "[a]re the remedies available to a public employee under chapter 41.56 RCW adequate as a matter of law, such that the employee may not assert a tort claim for wrongful discharge in violation of public policy?" 177 Wn.2d at 609. The *Piel* court found the "limited statutory remedies under chapter 41.56 RCW do not foreclose more complete tort remedies for wrongful discharge." *Id.* at 616.

Importantly, the *Piel* court specifically held its decision "does not require retreat from [*Korslund* or *Cudney*]." 177 Wn.2d at 616. The *Piel* court noted the administrative schemes at issue in *Korslund* and *Cudney* were not previously found to be inadequate to protect public policy and, unlike PERC, did not include a provision stating the "provisions of this chapter are intended to be additional to other remedies and shall be liberally construed." *Id.* at 617 (quoting RCW 41.56.905). The *Piel* court recognized *Korslund* found the ERA to have "comprehensive remedies," including back pay, compensatory damages, and attorney and expert witness fees. *Id.* at 613 (citing *Korslund*, 156 Wn.2d at 182). *Piel* further recognized that *Cudney* found the remedies

11

available under the WISHA to be "more comprehensive than the ERA and . . . more than adequate." *Id.* (citing *Cudney*, 172 Wn.2d at 533). Accordingly, if a statutory scheme has language and remedies analogous to those at issue in *Korslund* or *Cudney*, the scheme is distinguished from *Piel* and has comprehensive remedies to protect the public interest.

Here, the LGWPA provides remedies of reinstatement, back pay, injunctive relief, costs, reasonable attorneys' fees, and civil penalties and does not contain a provision providing "provisions of this chapter are intended to be additional to other remedies and shall be liberally construed" as was the case in *Piel*. 177 Wn.2d at 617 (quoting RCW 41.56.905). Ms. Rupert argues the LGWPA protections are inadequate because she cannot get compensatory damages. But, "[t]he other means of promoting the public policy need not be available to a particular individual so long as the other means are adequate to safeguard the public policy." *Hubbard v. Spokane County*, 146 Wn.2d 699, 717, 50 P.3d 602 (2002). Moreover, "the tort of wrongful discharge is not designed to protect an employee's purely private interest . . . rather, the tort operates to vindicate the public interest in prohibiting employers from acting in a manner contrary to fundamental public policy." *Smith v. Bates Technical Coll.*, 139 Wn.2d 793, 801, 991 P.2d 1135 (2000). The question here, as it was in *Korslund*, is "whether other means of protecting the public policy are adequate so that recognition of a tort claim in these circumstances is unnecessary to protect the public policy." *Korslund*, 156 Wn.2d at 183. In this case, we conclude they are.

12

No. 31950-4-III
*Rupert v. Kennewick Irrigation Dist.*

This case is like *Worley v. Providence Physician Servs. Co.*, 175 Wn. App. 566, 574-76, 307 P.3d 759 (2013) that was based on a similar whistleblower provision. This court held the employee's wrongful discharge in violation of public policy claim failed because whistleblower protections available under the Washington health care act, RCW 43.70.075, adequately promoted workplace safety, ensured compliance with the accepted standard of care, and prevented fraudulent billing in the health care industry.

In sum, because the LGWPA provides adequate remedies of reinstatement, back pay, injunctive relief, costs, reasonable attorneys' fees, and civil penalties, and because the statutory scheme in this case is different than the statutory scheme in *Piel*, Ms. Rupert cannot establish the jeopardy element of a wrongful discharge in violation of public policy claim. Without this element her claim fails. Nevertheless, we not for reasons similar to her retaliation claim, she also cannot establish the causation element. Given all, the trial court properly dismissed this claim in summary judgment.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Brown, J.

WE CONCUR:

Siddoway, C.J.

Korsmo, J.

13